MOORE v. FOWLE.

(Filed September 12, 1905).

*Injunctions Against Cutting Timber—Act 1901, Chapter 666—Descriptions in Deeds—Practice at Injunctive Hearings.*

1. The Act of 1901, chapter 666, is not a limitation upon the power of the courts to continue injunctions until the controversy can be decided by court and jury, but was intended to preserve the timber upon lands in litigation pending the suit and throws greater safeguards around the rights of litigants, and when the plaintiff satisfies the judge that his claim is *bona fide* and that he can show an apparent title to the timber, the judge should not dissolve the injunction, but continue it until the title can be finally determined.

2. A deed purporting to convey land "lying and being on the south side of Pamlico river and the south side of Blount's creek, containing 75 acres, be the same more or less, it being the same land Jas. Peele conveyed to Hiram Edgerton by deed, which deed will more fully show courses and distances, reference being had to the said deed, and deeded by the said Hiram Edgerton to William E. Shaw," is not void for uncertainty of description, as the deeds referred to can be offered in evidence on the trial and the land probably be located.

3. On hearings for injunctions the title is not required to be proved with that strictness and certainty of proof as upon the trial.

4. Description by name, where lands have a known name, is sufficient and a tract of land can be then located by its name.

ACTION by M. Moore and others against S. R. Fowle and others to recover damages for cutting timber upon land, now pending in the Superior Court of BEAUFORT County. His Honor, *Judge G. W. Ward,* granted a restraining order enjoining the defendants from cutting timber upon the land, and on the hearing continued the injunction. From this order, the defendants appealed.

*Nicholson & Daniel* for the plaintiffs.

*Small & McLean* and *A. O. Gaylord* for the defendants.

BROWN, J. It is contended by the defendants that the evidence offered by the plaintiffs did not show a *bona fide* claim based upon evidence sufficient to constitute a *prima facie* title in accordance with the terms of the statute (Acts 1901, chapter 666), and therefore the injunction should have been dissolved. We have examined all the affidavits and deeds set out in the record and have concluded that His Honor properly continued the injunction.

The Act of 1901 is not a limitation upon the power of the courts to continue injunctions until the controversy can be tried by court and jury. Section 1 specifies certain conditions when the injunction shall not be dissolved and when the court shall not permit the timber to be cut except by consent. Section 2 specifies a contingency when the court may permit one of the parties to cut the timber, and prescribes the conditions necessary to be complied with. This act was evidently intended to preserve the timber upon lands in litigation, pending the suit. Section 2 was intended to regulate the practice of giving bonds, which had obtained since *Lumber Co. v. Wallace,* 93 N. C., 22, and similar cases.

The rapidly increasing value of timber trees doubtless prompted the Legislature of 1885 to enact chapter 401, but the efficacy of this act was diminished by the general practice of permitting the defendant to give bond and to cut the timber *pendente lite,* or otherwise to appoint a receiver and permit the rental value or stumpage to be paid to him. The Legislature of 1901 has thrown greater safeguards around the rights of such litigants, and now, when the plaintiff satisfies the judge that his claim is *bona fide* and that he can show an apparent title to the timber, the judge should not dissolve the injunction, but continue it until the title can be finally determined.

The plaintiffs offer in evidence a deed from Gustavus Du-
pey to Samuel Moore purporting to convey "a certain piece
or parcel of land, lying and being on the south side of Pam-
lico river and the south side of Blount's creek, containing
75 acres, be the same more or less; it being the same land that
James Peele conveyed to Hiram Edgerton by deed, which
deed will more fully show courses and distances, reference
being had to the said deed, and deeded by Hiram Edgerton
to William E. Shaw." It is contended that this deed is void
for uncertainty of description. The plaintiffs, in addition
to the general principles of law, rely on the Act of 1891,
chapter 465, in support of this deed. It is unnecessary to
consider the value of such act as an aid to the plaintiffs' case.
It is not probable that the General Assembly intended to re-
peal the section of the Statute of Frauds, requiring convey-
ances of land to be in writing. A deed which fails to describe
any land is as void now as it was before the passage of the
Act of 1891.

It is plain that the deed is not void, for it calls for the
same land conveyed by James Peele to Hiram Edgerton, and
by Edgerton to Wm. E. Shaw. These latter deeds can be of-
fered in evidence on the trial and the land probably be lo-
cated. *Id certum est,* etc. The fact that they were not
offered at the hearing before the judge does not compel a dis-
solution of the injunction. On such hearings, the title is
not required to be proved with that strictness and certainty
of proof as upon the trial. The plaintiffs offer affidavits
tending to prove that the land is well known by name, to-wit,
as the Peele or Sam Moore land, and that the boundaries are
known to witnesses and can be easily located. Description
by name, where lands have a known name, is sufficient, and
a tract of land may then be located by its name. *Scull v.
Pruden,* 92 N. C., 168, citing many cases.

As we understand the case the defendants do not claim
this James Peele or Sam Moore land, and they express a

desire to keep off of it. It is therefore proper for the plaintiffs to point out to the defendant immediately the boundaries of the James Peele land as claimed by them, so the defendants' agents may not unwittingly trespass, pending the trial of the title. The order of the judge below is
   Affirmed.