FIRST NATIONAL BANK OF MANCHESTER *v.* TURNER.

Opinion delivered October 5, 1925.

1. JUDGMENT—DIRECT ATTACK—OVERCOMING PRESUMPTION OF REGU-LARITY.—Evidence, in a direct attack on a judgment, *held* sufficient to overturn the statutory presumption of service on the defendant therein arising from the recital of service.

2. JUDGMENT—DIRECT ATTACK—SHOWING OF MERITORIOUS DEFENSE.—Evidence *held* to make a *prima facie* showing of a meritorious defense to authorize a judgment obtained without service to be set aside on direct attack.

3. EVIDENCE—LETTER.—Where a contract for the sale of a stallion provided for return of the animal in case he did not prove serviceable, a letter from purchaser to seller informing the latter that the horse was not serviceable was not a sufficient *prima facie* showing of a breach of the contract.

Appeal from Lee Circuit Court; *E. D. Robertson,* Judge; reversed in part.

*Bogle & Sharpe,* for appellant.

*John I. Moore* and *Daggett & Daggett,* for appellee.

HUMPHREYS, J. The purpose of this suit was to set aside a judgment obtained by appellant against appellees on the 11th day of April, 1921 in the circuit court of Lee County. It was a direct attack upon the ground that the judgment was obtained without service. On the trial of the cause, the court set aside the judgment and granted a new trial, from which appellant prosecuted an appeal to this court. The Supreme Court reversed the judgment because the appellees failed to show that they did not know of the proceedings in the original action in which judgment was obtained against them. *First National Bank v. Dolsheimer,* 150 Ark. 464. After the mandate of the court was filed, the pleadings were amended so as to embrace the issues of whether appellees had knowledge of the pendency of the original suit before the default judgment was rendered, and whether appellees had a meritorious defense to the original cause of action. The trial court decided these issues in favor of appellees, and appellant has prosecuted an appeal to this court from the

judgment setting aside the original judgment and granting appellees a new trial.

The first contention for a reversal is that the evidence adduced was insufficient to overcome the *prima facie* presumption, arising from the recital in the original judgment, that service of process was had upon two of the appellees, J. F. Turner and John P. Caruthers. In addition to the testimony bearing upon the question of service, J. F. Turner testified positively that he was not served with process, and that he knew nothing of the pendency of the original suit or that the judgment had been rendered until in August of the year following the date of the judgment. J. W. Jones, a deputy sheriff, testified that the sheriff gave him the original process to serve, but that he knew nothing about service upon Mr. Turner; that he was under the impression Mr. Blair served a summons upon Turner. Mr. Blair testified that he did not serve process upon Mr. Turner. We think the evidence sufficient to overturn the statutory presumption of service on J. F. Turner, arising from the recital of service in the original judgment. The court erred, however, in setting aside the judgment against John P. Caruthers, for he admitted that he knew about the pendency of the suit.

The next contention for a reversal is that the evidence adduced was insufficient to show a meritorious defense to the original action on behalf of J. F. Turner. The basis of the original suit was notes in the aggregate sum of $2,100, which were executed by J. F. Turner and several associates for the purchase of a coach stallion. J. F. Turner testified that he was induced to sign the notes upon the representation of a man by the name of Rivers, who had the stallion in possession and who negotiated the sale, to the effect that the purchasers would be individually and severally liable to the extent of only $300; and, to lend plausibility to the representation, said party delivered purchasers each a certificate of membership for one share of stock valued at $300 in the coach stallion Beauregard, and, after the contract was

executed, accepted a payment of $100 on the first note, and credited it as paid by Caruthers in his individual capacity. J. F. Turner also testified that, after the maturity of the notes, he received notice from a bank in Dallas, Texas, that it held the notes, and later a notice from a bank in Fort Smith that it held the notes. The indorsement under which appellant claims title to the notes was in blank. A reasonable inference might have been drawn from these facts that appellant purchased the notes after maturity. We think appellee, J. F. Turner, made a *prima facie* showing of a meritorious defense, and that appellant was not a purchaser of the notes in good faith for value before maturity. This was the extent of the showing necessary for him to make in order to set aside the original judgment. *Knights of Maccabees* v. *Gordon,* 83 Ark. 17; *Quigley* v. *Hammon,* 104 Ark. 449; *Osburn* v. *Lawrence,* 123 Ark. 477.

Appellee, J. F. Turner, also contends that he made a *prima facie* showing of a breach of the contract by the owner of the horse in failing to replace him with another on account of not being a fifty per cent. foal-getter. The contract provides for the return of the horse by the purchasers in case he did not prove serviceable. Conveying this fact to the owner by letter was not a sufficient *prima facie* showing of a breach of the contract. In the present state of this piece of evidence, we refrain from determining whether there was a breach of the contract in this particular.

The judgment is affirmed as to J. F. Turner, and reversed as to J. P. Caruthers *et al.*