Woods *v.* Quarles.

Opinion delivered February 11, 1929.

*Brewer & Cracraft* and *Williamson & Williamson,* for appellant.

*Wilson & Norrell* and *W. G. Dinning,* for appellee.

Mehaffy, J. Appellee brought suit in the Drew Chancery Court against G. A. Woods and A. S. Woods,

alleging that he, Quarles, was a resident of Phillips County, Arkansas; that on the 4th day of April, 1925, in a cause pending in the Drew Chancery Court, wherein G. A. Woods and others were plaintiffs and T. D. Hunt and others were defendants, a writ of garnishment was issued out of Drew Chancery Court, directed to the sheriff of Phillips County, Arkansas, wherein John M. Quarles was named as garnishee; that, pursuant to said writ of garnishment, on June 10, 1925, judgment for $8,750.35 was rendered against him by reason of his failure to answer in response to said writ of garnishment. A certified copy of the judgment was attached to plaintiff's complaint as a part of same.

Quarles further alleged that the decree was void because the Drew Chancery Court had no right or authority to issue a writ of garnishment directed to the sheriff of Phillips County, directing him to serve the same upon Quarles, a resident of Phillips County, Arkansas, and that the issuance and delivery of such writ was wholly void, and the judgment of the Drew Chancery Court based thereon exceeded its jurisdiction. He also alleged that said writ of garnishment was not served upon him in any manner, although the same has a return indorsed thereon showing that the same was served by E. Toney, deputy sheriff. He stated that the return was false and fraudulent, and that no service was had upon him, and that he had no knowledge, either actual or constructive, of the garnishment proceeding against him until March, 1927. On the 23d of March, 1927, the appellants filed suit in the Phillips Chancery Court, alleging that they had recovered a judgment against Quarles by reason of the garnishment proceeding, and sought to subject certain funds recovered by Quarles from the Ætna Casualty Company to the payment of said judgment; that service of summons in the suit in the Phillips Chancery Court was served shortly after March 25, 1927, and that this was the first information, either actual or constructive, which Quarles had of the pendency of any garnishment proceeding in the Drew Chancery Court; that if the writ

of garnishment had been served on him, he could and would have filed an answer to the same, denying that he was indebted to Hunt in any sum whatever. He alleged that Hunt is insolvent, and is, in fact, indebted to the plaintiff.

Plaintiff prayed that the decree of the Drew Chancery Court be canceled and set aside, and for all proper relief.

It was shown that G. A. Woods and A. S. Woods were nonresidents of the State of Arkansas, and a warning order was published. The burden was, of course, on appellee to show not only that the return of the officer was false, that no service was ever had on him, but also to show that he had a meritorious defense. He alleged that he was not indebted to Hunt in any way, but that Hunt was indebted to him, and, if that were true, it would have been a meritorious defense.

Appellants, however, state in the beginning of the argument that the only issue of fact presented by the appeal is the allegation of appellee in his complaint, which was sustained by the lower court, that he, Quarles, was not served with the writ of garnishment involved—that the sheriff's return is false.

All of the material allegations in the complaint were denied by appellants, and they also denied the jurisdiction of the court, and alleged that his action was stale; that he was guilty of laches; and also pleaded estoppel.

The chancery court held that the writ of garnishment issued on the 4th day of April, 1925, was never served in any manner whatever upon John M. Quarles, and set aside the default judgment rendered on June 10, 1925, in the sum of $8,750.35, together with interest, canceling, vacating, setting aside and holding for naught said judgment.

Quarles himself testified that he lived in Helena, Arkansas, and filed as an exhibit to his deposition the certified copy of the judgment or decree rendered by the Drew Chancery Court on the 10th day of June, 1925. That the writ of garnishment issued by the Drew Chan-

cery Court April 4, 1925, was never served on him by Edgar Toney or any one else, and that he never learned anything about the judgment by default until summons was served on him in the Phillips Chancery Court, March 26, 1927; that he had neither actual nor constructive notice; that, if said garnishment had been served, he would have taken steps to prevent any judgment; that he did not owe Hunt anything, and that Hunt was still indebted to him. He further testified that at the time the deputy sheriff claimed to have served the garnishment he was living in Little Rock, with his family; that his wife's health was not good, and that he did not go back to Phillips County until the 28th day of May, 1925, about 18 days after the date on which the deputy sheriff claimed to have served him in Helena; that he was not in Helena in May until the 28th; that he had no recollection of Toney serving him with papers in front of the Cleburne Hotel, when he got off the train. That he was never served by Toney, the deputy sheriff, with any papers of the kind in this case, during 1925.

Mrs. Elizabeth Walker, the mother of Mrs. John M. Quarles, who is 69 years old, testified that she lived in the home with Mr. Quarles, and had for the last seven years; was living with them in Little Rock in May, 1925, where they had been all the year, and that they moved away from Little Rock on May 29, 1925; that for ten days or two weeks previous to that, Quarles was in Little Rock all the time, on account of the sickness of his wife; that John M. Quarles was in Little Rock on May 20. He was at home all hours of the day to see his wife, because she was ill, and he did not leave town.

Edgar Toney, the deputy sheriff, testified that he served the original writ of garnishment on John M. Quarles, in Phillips County, Arkansas; that the return was in his handwriting, and that it correctly recited the facts, and that he recollected serving it, and he thought it was in front of the Cleburne Hotel; that he remembered his former testimony, and remembered serving this paper on Quarles. He said he was not testifying

that he served it for the reason that the return was written by him, but that his memory about the paper is now clearer than it was when he first testified; that he did not think he testified, on November 16, that he had no personal recollection of having served the paper.

In his former testimony he said: "Well, it seems to me now that about two years ago I served a paper similar to this, that is, in size, on Mr. Quarles. But, it being so long, I cannot remember, and lots of papers I serve I never read the contents. But I remember serving a paper like this on Mr. Quarles."

He also testified in the present case that he read the contents of the writ of garnishment before he served it. Toney was a deputy sheriff, and had been for six years. He said, as deputy sheriff, he had served several papers on Mr. Quarles, but never served but one paper the size of the writ of garnishment. He did not remember ever serving a paper on Quarles at his residence or giving one to any member of the family, but had always caught him down town.

In order to set aside a decree rendered without notice, it is necessary to make a *prima facie* showing of a meritorious defense. The appellee in this case in the court below, in order to have the decree set aside, was required to show a meritorious defense, and that the writ of garnishment was never served upon him. The testimony as to a meritorious defense is undisputed, and is sufficient. The evidence shows that Quarles did not owe Hunt anything, and, if that is true, this would be a complete defense. The evidence on the question of whether the writ of garnishment was served is conflicting. But Quarles testifies positively that the writ was never served, and he also testifies that he was in Little Rock during the entire month of May, or rather, until the 28th day of May, and was not in Helena, and, if this is true, the writ could not have been served on him in Helena.

Mrs. Elizabeth Walker, the mother-in-law of J. M. Quarles, testifies that she lived in the home of Quarles in Little Rock, and testifies to the same, in substance,

that Quarles did about his being in Little Rock in May and not being in Helena at the time the deputy sheriff says he served the writ of garnishment.

The return of the officer is *prima facie* true, but this court has many times held that evidence might be introduced to show that no service was had.

"This court is committed to the doctrine that an officer's false return of service of process shall not preclude the defendant from showing the truth, in a proper proceeding to be relieved from the burden of a judgment or decree based thereon. One who is aggrieved by a judgment rendered in his absence must show, not only that he was not summoned, but also that he did not know of the proceeding in time to make a defense." *Karnes* v. *Ramey,* 172 Ark. 125, 287 S. W. 743. See also *State* v. *Hill,* 50 Ark. 458, 8 S. W. 401; *First National Bank* v. *Dalsheimer,* 157 Ark. 464, 248 S. W. 575; *First National Bank of Manchester* v. *Turner,* 169 Ark. 393, 275 S. W. 703.

In passing upon a question very similar to the question in this case, this court said:

"Considering that it does not appear that the judgment was obtained by fraud practiced by the successful party, the court is of opinion that in this case the defendant was prevented, without any fault upon his part, from appearing or making his defense to the action, and that his case comes fairly within the spirit of the seventh subdivision of § 4197, Sandels & Hill's Digest." *Hunton* v. *Euper,* 63 Ark. 323, 38 S. W. 517.

In the above case the plaintiff brought suit, just as was brought in the instant case, to set aside the judgment, upon the ground that it was rendered without any summons or notice having been served on him. The complaint also prayed for a temporary restraining order to prevent the execution of the judgment until the hearing, which was granted. The return showed that defendant had been served, just as it does in the instant case. It appeared that it was served by a negro boy 16 or 17 years of age, who testified that he had given the paper to a

man he supposed to be Mr. Euper, and thought it was an account. The evidence also showed that the summons was handed to the negro boy by the attorney for the plaintiff in the action, with directions to give it to defendant Euper, and he handed it to a man who was pointed out to him as Euper. Euper swore positively that he had never been handed a summons in the case by the boy, and had never been served, and knew nothing of the judgment until long after the term of court had elapsed.

Under our decisions, if the negro boy or anybody else had given him a summons, or if he had knowledge that the suit was pending, he would have been required to answer, and, if he failed to do so, he could not, after the term of court had expired, maintain a suit to set aside the judgment or decree. In the instant case, however, Quarles testifies positively that he not only was not served, but that he knew nothing of the suit, and had never heard of it until March, 1927. When he did find out about it, he immediately brought suit to set aside the decree.

As to whether the writ of garnishment was served on Quarles and whether he had any notice that the suit was pending, were questions of fact, and the finding of the chancellor is supported by a preponderance of the evidence. However, the appellant contends that, even if the summons was not served, Quarles' attorney had notice, and that notice to the attorney was notice to the client, and cites and relies on § 1334 of Crawford & Moses' Digest, *State* v. *West,* 160 Ark. 419, 254 S. W. 828, and *Bank of Hoxie* v. *Merriwether,* 166 Ark. 39, 265 S. W. 642, and numerous other authorities from which he quotes. The section of the Digest relied on reads as follows:

"Where it is not otherwise specially provided, a notice to a party in an action of any motion or proceeding to be made or taken therein, in court or before a judge, may be served upon such party or his attorney; but the service upon the attorney in any such case must be by delivering to him a copy of the notice." Section 1334, Crawford & Moses' Digest.

In the case pending in the Drew Chancery Court, Quarles was not a party until the writ of garnishment was issued. He therefore had no attorney representing him in that litigation upon whom a notice could have been served. And certainly notice, if it had been served in the manner provided by statute on some lawyer simply because he had represented him in some other case, would not bind him in that case. It would be no notice whatever. Besides, a writ of garnishment is a summons. Its purpose is not only to prevent the garnishee from paying money to the person to whom he owes it, but it is a summons for him to appear in court and answer the interrogatories filed, and it must be served as any other summons. Notice to an attorney that a summons has been issued in a case where a party is defendant would be no notice whatever to the party simply because he had employed the attorney in some other litigation.

In the first case referred to by appellant, the court said:

"It is not denied that Ivie, who was and is her attorney, was served with notice. It is true this attorney accepted the service only for himself and not for his client, but the service upon him was not in his individual capacity but as the attorney for the widow; and it was not denied and is not denied that he was then and is now her attorney in this matter." *State* v. *West,* 160 Ark. 413, 254 S. W. 828.

There is no suggestion in the instant case that the attorney notified was the attorney for Quarles in this matter. He never represented him in this matter, and was not authorized to receive notice, and no notice was served on him. There was some correspondence between the attorney who had formerly represented Quarles and the attorney for the appellant, but the attorney with whom the correspondence was had did not represent Quarles in this matter, and Quarles never had notice, either actual or constructive, according to his testimony, of the writ of garnishment.

In the next case to which attention is called by appellant and on which he relies, the court said:

"Notice to Albright, who was the cashier of the bank, was notice to the bank. The general rule is that the principal is affected with notice of all that his agent knows in the line of his duty or within the scope of his powers. A corporation must necessarily act through agents, and the general rule is that knowledge of an agent acquired in the ordinary discharge of his duties for the corporation is ordinarily to be imputed to the principal." *Bank of Hoxie* v. *Meriwether,* 166 Ark. 39, 265 S. W. 642.

There is nothing in the decision in the above case that supports the contention of the appellant in this case. The attorney with whom the correspondence was had was a lawyer in Little Rock, and not an attorney of Quarles in this matter, and nothing he did was within the line of his duty as attorney for Quarles. When a client employs an attorney in a certain litigation, notice to the attorney of motions and actions taken in that particular case ordinarily bind the client. But it has never been held that notice to an attorney in a case in which he had not yet been employed was notice to the party, although he may have represented the party in other litigation.

The evidence in this case fails to show that Quarles had any notice whatever of the writ of garnishment, other than the testimony of the deputy sheriff that he served it upon Quarles. The notice that it is claimed was given to attorneys might as well have been served on or given to any attorney in Arkansas. Service on an attorney means service on the attorney employed in the particular litigation or employed generally. It does not mean service on an attorney who at some time had represented the party. This is no notice at all, and we therefore think that Quarles had no notice of the pendency of the suit, and that there is no evidence tending to show that he had notice, other than the testimony of the deputy sheriff, showing that he served the writ of garnishment.

The appellant next contends that this is not a direct attack, but a collateral attack on the decree, and calls attention to a great many authorities to the effect that, on collateral attack, the question is tried upon the record only. We do not agree, however, with the appellant in this contention. This is a direct attack, and, as we have already shown, evidence may be introduced that no service was ever had. A direct attack on a judgment is an attempt to amend it, correct it, reform it, vacate it, or enjoin the execution in a proceeding instituted for that purpose. And a motion or petition to vacate a judgment is a direct attack thereon. 15 R. C. L., 839; *Continental Gin Co.* v. *DeBrod,* 34 Okla. 66, 123 Pac. 129; *Newman* v. *Mackey,* 37 Tex. Civ. App. 85, 83 S. W. 31; *Housser* v. *Bonsal & Co.,* 139 N. C. 51, 62 S. E. 776. Then the cases decided by this court already referred to show conclusively that this is a direct attack.

Appellant further contends that the motion to dismiss for want of service should have been granted, and that no personal judgment can be rendered on constructive service. It is not necessary to decide these questions, because the appellants entered their appearance and filed answer, and thereafter the court entered an order setting aside the decree.

Our conclusion is that the evidence shows there was no service, and that Quarles had no notice, either actual or constructive. The decree of the chancery court is correct, and it is therefore affirmed.

KIRBY, J., dissents.