STATE OF MISSOURI at the relation of HUGH MCKITTRICK JONES, JOHN F. SCHLAFLY, J. B. CORBY, ALVAN J. GOODBAR, LEAH V. R. OLIVER SCARLETT, THOMAS P. MOORE, HELEN D. BRIDGE, MARY PLATT NOBEL, MORTIMER BURROUGHS, BENEDICT FARRAR, GURDON G. BLACK, ROBERT L. JORDAN, EDWARD S. FUNSTEN, CROW INVESTMENT COMPANY, a Corporation, FRANK J. POLLNOW, WILLIAM N. MATTHEWS and ROYALL H. SEITZLER, Relators, v. JULIUS R. NOLTE, JOHN A. WITTHAUS, PETER T. BARRETT and JOHN J. WOLFE, Judges of the Circuit Court of St. Louis County, Missouri.—No. 38046.—165 S. W. (2d) 633.

Court en Banc, November 12, 1942.

*Alvan J. Goodbar, Henry T. Ferriss* and *Homer Hall* for relators.

276

*T. Douglas Moore* for respondents; *Fordyce, White, Mayne, Williams & Hartman* of counsel.

*Williams, Nelson & English* and *Charles Claflin Allen, Jr., amici curiae.*

HAYS, J.—Original proceeding in prohibition. The relators are defendants in certain suits for the collection of taxes brought by the Central Sewer District of St. Louis County, Missouri, in the Circuit Court of that County. The respondents are the Judges of said Court. Our preliminary rule was issued and the respondents filed a return thereto admitting certain of the allegations in the petition and denying others and set up some additional facts in defense. No reply to this return was filed nor was any evidence taken but the case was briefed, orally argued and submitted as if a motion for judgment on the pleadings had been filed. We will so consider it. In this state of the record we accept as the facts of the case the matters alleged in the petition and admitted or not denied in the return, together with such other facts as are pleaded in the return but not denied by the relators.

In April, 1927 a petition was filed in the Circuit Court of St. Louis County praying for the incorporation of a sewer district which should contain certain lands described in the petition. The proceeding was instituted under the authority of an Act approved March 25, 1927 [Laws of 1927, p. 439 et seq.], which we will hereafter refer to by its popular title as the Ralph Act. In the petition the proposed sewer

district was called the Brentwood Sewer District. A notice was duly published ▆▆▆ describing the boundaries of the district as they were set out in the original petition. After the publication of this notice the petitioners asked leave of the Circuit Court to amend the description of boundaries in order that the same might be clarified. Such amendment was permitted. Actually the amended description changed the boundaries stated in the original petition and included within the district a few acres of land which lay outside of the original description. At about the same time the petitioners also asked leave to amend, changing the name of the proposed district to the Central Sewer District and this amendment was also permitted. A final decree of incorporation was entered, setting out the boundaries of the district as the same had been described in the amended petition. It then became known that the description had been actually changed by the amendment and that lands not included in the publication notice had been inadvertently incorporated in the district by the decree. At the next term of court this decree was amended nunc pro tunc to make the description correspond to that contained in the original petition and the published notice. Shortly after this a petition of property owners was filed with the court seeking to annex to the district certain lands not originally contained therein and after due and proper publication a further decree was entered ordering the annexation as prayed. The lands owned by the relators in this case were not included in the original district nor in the small tract of land inadvertently added to the district by the original decree but are in the tract of land which was annexed to the district after the proceeding last mentioned. The board of supervisors of the district then proceeded to levy a preliminary organization tax under the authority of Sec. 7 of the Ralph Act upon all of the lands of the district, including those annexed thereto and of course including the lands of these relators. The amount of such tax was fixed at ten cents per square of one hundred square feet. Relators failed to pay this tax and, at a time more than six months subsequent to the tax becoming delinquent, the tax suits here involved were instituted for its collection.

The Ralph Act was repealed by the General Assembly by an Act approved May 1, 1931 [Laws of 1931, p. 355]. But this law continued in force ''All of the provisions of the law hereby repealed . . . for the purpose of paying all outstanding and lawfully incurred costs, obligations and liabilities of all sewer districts.'' By an Act of December 15, 1933 [Laws of Mo., Extra Session 1933-34, p. 117] the General Assembly provided that when any sewer district had been dissolved pursuant to law ''The Governor shall appoint a liquidator of such sewer district.'' The act also provided that the liquidator so appointed should qualify by taking an oath and should give bond to be approved by the circuit court; that the Governor should have power to remove such liquidator and appoint a successor; that the liquidator

should have all of the powers originally conferred on the board of supervisors and should take over the property of the district for the purpose of liquidation. This act contained an emergency clause putting it into effect immediately.

On January 20, 1934, the Governor appointed William H. Tegethoff as liquidator for the sewer districts of St. Louis County. Tegethoff was made a plaintiff in the tax suits here under consideration. Subsequently he resigned and Walter R. Mayne was appointed liquidator for the sewer districts of St. Louis County. He filed his oath and gave bond in the sum designated by the Circuit Court. Mayne was thereafter made a party plaintiff in the tax suits.

Relators seek to prohibit the respondents from proceeding further in these suits for the reason that they are alleged to be without jurisdiction thereof. We pass over without consideration the question of whether or not a single writ of prohibition should be issued to deal with a number of different proceedings in the court below if involving a different plaintiff. This question has not been raised by demurrer or motion and we therefore proceed to consider the merits of the case. In so doing we must have in mind the well established rule that the function of a writ of prohibition is to stop an inferior tribunal from considering a proceeding of which it has no jurisdiction or from taking an action in a case which is in excess of its jurisdiction. The writ of prohibition cannot be made a substitute for a writ of error. In other words if the court below has jurisdiction of the subject matter of the action and of the person of the parties thereto, our writ will not be issued simply to prevent the judges of the circuit court from making an erroneous decision. [State ex rel. Dawson v. Rombauer, 99 Mo. 216, 12 S. W. 661; State ex rel. Bernero v. McQuillin, 246 Mo. 517, 152 S. W. 347; State ex rel. Terminal R. Assn. v. Tracy, 237 Mo. 109, 140 S. W. 888, 37 L. R. A. (N. S.) 448; McBaine, "The Extraordinary Writ of Prohibition in Missouri," Univ. of Mo. Bul., 32 L. Ser. 13; Rule 32 of this Court.]

It is asserted by the relators that the respondents are without jurisdiction of these tax suits because the Central Sewer District was never properly incorporated and hence never became a legal person capable of bringing a suit. Therefore they argue that there is no plaintiff in the present actions. In this connection the relators contend that the incorporation proceedings were so fatally defective as to be a complete nullity. It is true, as said by the relators, that the original decree attempted to place in the district certain lands which were not included in the description used in the publication notice. The effect of such inclusion, however, could not be to avoid the entire proceeding. At most it would simply be void as to the lands improperly included, and it is to be noted that none of the relators owned land in the tract thus inadvertently added. [Big Lake Drainage District v. Rolwing, 265 Mo. 450, 178 S. W. 110.] In any event, however, the misdescription

in the decree was a mere clerical error which the court had power to correct and did correct by a nunc pro tunc entry. Such an entry could properly be based upon the original petition and the original order of publication which were a part of the record proper in the case.

Nor do we consider that the mere change in name of the sewer district was such an amendment as would be invalid after service by publication. The sewer district, as an entity, was of course not a party to the proceeding for incorporation. The parties were the petitioners on the one hand and the other landowners in the proposed district on the other. The rights of none of these parties could be prejudiced by the amendment permitting the change of name.

Relators contend that the proceedings for incorporation were void because the Ralph Act itself was unconstitutional. They argue that our prior decisions holding the act valid are not now controlling because they were not parties to those prior cases and because the constitutional issues now urged upon us were not involved therein. [Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 415; State ex rel. Gatewood v. Trimble, 333 Mo. 207, 62 S. W. (2d) 756.] The present constitutional objections to the act are based upon the fact that, as construed by the St. Louis Court of Appeals in Normandy Consolidated School District v. Wellston Sewer District, 77 S. W. (2d) 477, it exempts from taxation for the purpose of the act the property of school districts, municipalities and other political and civil subdivisions located within its limits. It is said that such an exemption violates Secs. 3 and 4 of Art. X of the State Constitution. The first of these cited provisions requires that taxation shall be "uniform upon the same class of subjects." The second section provides that all property shall be taxed in proportion to its value.

We consider the uniformity requirement contained in Sec. 3, supra, and the like requirement of the equal protection clause of the 14th Amendment to the Federal Constitution together. No absolute requirement of uniformity in taxation is therein contained. The only requirement is that the taxation of subjects which fall in the same class or category be uniform. Such has been the construction of similar clauses in the constitutions of many of our sister states. [M., K. & T. Ry. Co. v. Miami County (Kan.), 73 Pac. 103; State ex rel. Lewis v. Smith (Ind.), 63 N. E. 25, 63 L. R. A. 116; Commonwealth v. Bank (Pa.), 31 Atl. 1065; State Board of Assessors v. Central Railroad Co., 48 N. J. Law 146.] The General Assembly is thus left with large powers to create different classes or categories of subjects for the purpose of taxation. Of course, in so doing the principle of classification adopted must have a reasonable justification. [Michigan Central R. Co. v. Powers, 201 U. S. 245, 26 Sup. Ct. 459, 50 L. Ed. 744.] Obviously a classification based upon the fact that certain property is owned by public governmental units is a reasonable one. It has always been the policy of the common law to exempt from taxation property

belonging to such governmental agencies. There is a fundamental inconsistency in a system which under the guise of taxation would take from one agency of government property which it had acquired through taxation and give it to another agency of government. We therefore hold that the uniformity requirements of the State and Federal Constitutions are not violated by the exemption of school districts and municipal property.

 But it is said that the preliminary organization tax of ten cents per square of one hundred square feet is not taxation in proportion to value and hence violates Sec. 4 of Art. X of the State Constitution. This constitutional provision, however, applies only to what are known as property taxes. It has no application to special local assessments of the kind here involved. [Garrett v. St. Louis, 25 Mo. 505, 69 Am. Dec. 475; Morrison v. Morey, 146 Mo. 543, 48 S. W. 629; Ranney v. Cape Girardeau, 255 Mo. 514, 164 S. W. 582; State ex rel. Broughton v. Oliver, 273 Mo. 537, 201 S. W. 868; (some of these cases were decided under the provisions of our former constitutions but these were substantially similar to Sec. 4, supra).]

 It is stated by the relators that these taxation features of the Ralph Act deprived them of their property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution. No authority, however, is cited for this proposition. Like any other taxing statute this law takes away property of the taxpayer but it does not deprive him of such property without due process. The act itself is a valid exercise of the police power of the state and the taxes levied thereunder are necessary to implement the law itself. Nor is there any fundamental injustice in assessing this small preliminary organization tax on a basis of the amount of land without regard to its value. All of the lands in the district are necessarily benefited by the creation of the district itself. The principal tax to be used in constructing the engineering works contemplated must be assessed under the law on a basis of benefits and damages to the individual landowner, but the very process of such assessment would necessarily require the expenditure of money which can only be raised through the small initial organization tax here in question. There is no deprivation of property involved in assessing such tax by the simple method of computing the extent of land in each tract.

 But it is said by the relators that the act is unconstitutional because it permits the board of supervisors of the district to acquire certain property outside of the district for outlets, etc. It would be a sufficient answer to say that this district has not attempted to acquire any of relators' property in that manner and that relators are therefore not in a position to raise the constitutional question. However, a reading of the act discloses that it was not the intention of the legislature to permit the supervisors to acquire such property without paying for it. Certainly they would be required to purchase the

property by ordinary contract or to acquire it through condemnation, in which event no one's property would be taken without due process.

It is next contended by the relators that, even though the Central Sewer District was properly incorporated in the first instance, the liquidator who is now proceeding with the action was not properly appointed and has no right to carry it on. This argument is based upon the fact that the Governor appointed both Mr. Tegethoff and Mr. Mayne as liquidators for all of the sewer districts in St. Louis County. Reduced to its simplest terms the argument is this: That the Governor should have issued to the liquidator separate commissions for each of the several sewer districts in the county and not simply one commission including them all, and that the liquidator should have subscribed to separate although identical oaths in the cases of the different sewer districts and should have posted separate bonds and not one bond covering all of the districts. Sec. 3 of the Act of December 15, 1933, provides: "In any county in which there are now or hereafter shall exist more than one district to which this act is or shall become applicable, the Governor shall appoint the same liquidator for all of such districts." Whether it would have been better practice to have issued a number of different commissions to the same man in lieu of one commission and to have required separate although identical oaths and bonds we do not say. But at most the failure to do so was a mere irregularity which could not affect the validity of the appointment. Admittedly the liquidator was appointed by the Governor who had the statutory power so to act. Admittedly he has taken the oath of office and he has filed a bond in an amount determined by the circuit court to be sufficient to safeguard the handling of the funds of all of these districts. Surely the substance of the law has been complied with and his authority is not open to attack in this proceeding.

Relators attack the constitutionality of the Liquidator Act of Dec. 15, 1933, upon the ground that it is retrospective and thus violates Sec. 15 of Art. II of the State Constitution. In this connection they state that it is an ex post facto law. As used in both the State and Federal Constitutions the term ex post facto law applies only to criminal legislation; that is, to laws which denounce as crimes acts which were innocent when committed or which change the penalties to be imposed for criminal violations after the date of the violation. The term retrospective law, however, in the State Constitution has a wider significance and the provision last cited is closely analogous to the obligation of contracts clause of Sec. 10, Art. I of the Constitution of the United States. Both of these provisions apply to laws which take away the vested rights of individuals after those rights have been acquired. [McManus v. Park, 287 Mo. 109, 229 S. W. 211; Gibson v. Chicago, Great Western R. Co., 225 Mo. 473, 125 S. W. 453; Clark v. Kansas City, St. L. & C. R. Co., 219 Mo. 524, 118 S. W. 40.]

It is impossible to see how any vested rights were impaired by this Liquidator Act. As we have noted above, the law which repealed the Ralph Act continued it in force for the purpose of paying off and discharging obligations which had been incurred thereunder. The Liquidator Law simply sought to carry into effect these provisions by providing proper machinery therefor. Nor can we say that the Ralph Act itself or the Liquidator Act created any special privilege or immunity in violation of Sec. 15 of Art. II of the State Constitution. These prohibited special privileges are those granted to private individuals not to public governmental bodies.

Relators contend that the title to the Ralph Act is defective in that it refers to sewer districts but does not specify storm sewers and that the act itself combines legislation relating to storm sewers with legislation relating to sanitary sewers. It is quite obvious, however, that the two subjects are so closely connected that it is not only proper but almost inevitable that they be covered in the same legislation.

Relators next contend that under the terms of the Ralph Act the Board of Supervisors had no power to levy the preliminary organization tax on lands which were not within the district as originally organized but were annexed to the district thereafter. Sec. 7 of the Ralph Act provides for the imposition of such tax "upon all the lands within such district." Now, clearly, lands which are legally annexed to the district are lands within it and hence are subject to the tax here in question.

As we have stated above the tax here levied had become delinquent more than six months prior to the bringing of these tax suits. Sec. 7 of the Ralph Act provided that the preliminary organization tax should be collected in the same manner as the annual installment taxes thereafter provided for. Sec. 20, which refers to the collection of the annual installment tax by suit, provided that actions thereon "shall be instituted in the circuit court without regard to the amount of the claim within six months after December 31st of the year for which said taxes were levied." Relators argue that this is a limitation section and that the institution of a suit more than six months after December 31 is too late. In the first place, a statute of limitations bars the remedy but does not destroy the right. It is procedural only. Advantage of it must be taken by a demurrer if the running of the statute appears on the face of the petition, or by a special plea if it does not. The question, therefore, is not one of jurisdiction. It is not properly raised by a petition for prohibition. However, since the matter is now before us it will be well to dispose of this contention also. Provisions almost identical with the one here involved are contained in a number of other tax laws and we have held that they are directory and not mandatory. They are not statutes of limitations

286

and may not be so construed. [Drainage District v. Bates County, 269 Mo. 78, 189 S. W. 1176.]

■ Closely connected with the question of limitations is that of laches. These suits have been pending without trial for many years. The circuit judges before whom they are pending would undoubtedly have a right, if they so saw fit, to dismiss them for failure to prosecute. But this is a matter lying wholly within the jurisdiction of the circuit court. We cannot interfere by prohibition with the exercise of such discretion.

■ Finally it is contended that the taxes here sought to be collected were improperly levied because no provision was made for the use of the money derived ■ therefrom for paying damages assessed against lands in the district. This again is a question which goes to the merits of the proceeding and not to the jurisdiction of the trial court. However, it is clear that Sec. 7 of the Ralph Act provides that the funds derived from this preliminary tax may be used for four different purposes. Because they were used for some and not all of these purposes the tax itself does not become invalid. This is a matter of discretion with the supervisors of the district. Even the trial court would not be authorized to substitute its judgment for theirs. Certainly this court in a prohibition proceeding cannot do so.

Certain other contentions and objections are raised by the relators in their petition, but they have not been briefed or argued and we are not called upon to pass upon them. It will be sufficient to say that after a careful examination of the whole record it is our conclusion that the respondent judges have jurisdiction of the various tax suits here involved and have not attempted to exceed their jurisdiction in any act they have taken or threatened to take.

It follows, therefore, that our Preliminary Rule was improvidently issued and must be discharged. It is so ordered.

All concur except *Gantt, J.*, absent.