STATE OF MISSOURI, at the Relation of ALLEN T. SWEEZER, Relator, v. THE HONORABLE G. DERK GREEN, Judge of the Circuit Court of Linn County, Missouri, Respondent, No. 41956—232 S. W. (2d) 897.

Court en Banc, October 9, 1950.

*H. K. West* for relator.

*J. E. Taylor,* Attorney General, *Gilbert Lamb* and *C. B. Burns, Jr.,* Assistant Attorneys General, for respondent.

CONKLING, J.—This original action in prohibition challenges the jurisdiction of the respondent circuit judge to proceed under a petition filed, as authorized in Mo. R. S. A., Sec. 9359.3 (Laws Mo. 1949, p. 252, et seq.), in the circuit court of Linn County by the prosecuting attorney of that county. The above statutes here questioned, hereinafter referred to as the Act, became effective August 1,

1949, and provide for the detention and treatment of criminal sexual psychopaths. The case is one of first impression in this state.

Generally, the Act declares who shall be considered a "criminal sexual psychopath" and provides that "when any person is charged with a criminal offense" and it shall further appear that such person is a criminal sexual psychopath the prosecuting attorney shall file in the pending criminal proceeding a petition "setting forth facts tending to show that the person named is a criminal sexual psychopath." The Act further provides what the petition shall contain, for the service thereof upon such person named, and for a hearing to determine whether defendant shall be medically examined, etc.; that if, upon such hearing, prima facie proof of criminal propensities to the commission of sex offenses be made, the court shall appoint medical examiners to examine the person charged. The report of the medical examiners shall not be open to public inspection. It is provided that under stated conditions the court shall dismiss the petition. Under other stated conditions a hearing upon the question of whether such person is a criminal sexual psychopath is required to be held. That hearing may be before a jury. Proper safeguards such as counsel, appeal, etc., are provided. If upon the trial of the issue such person named be judicially found to be a criminal sexual psychopath he may be committed to the State Hospital at Fulton for treatment. The Act sets out the conditions of his release from such detention after such treatment, and contains certain other provisions not here necessary to state.

It is conceded that on July 2, 1949, the prosecuting attorney of Linn County filed in the circuit court of that county an information charging Allen T. Sweezer (hereinafter called relator) with an assault "on or about the 16th day of June, 1949", in that relator did in the manner fully set out therein "unlawfully assault one Charlotte Jane Edens." Thereafter, and on October 21, 1949, the prosecuting attorney filed in the above cause the petition provided for in Mo. R. S. A., Sec. 9359.3 praying the court to make inquiry and determine whether relator was a criminal sexual psychopath. That petition set forth, as required by that section, certain facts tending to establish that for more than a year relator had been suffering from such a mental disorder (as evidenced by specifically pleaded instances of sex deviations with minor female children and women) as made him a criminal sexual psychopath under the Act. After the filing of that petition, and upon the application to us of the relator attacking respondent's jurisdiction to proceed under the prosecuting attorney's petition, we issued our provisional rule in prohibition.

Relator contends (1) that inasmuch as the assault upon Charlotte Jane Edens is alleged, in the information filed July 2, 1949, to have occurred "on or about the 16th day of June, 1949" (and before the effective date of the Act), that the Act, if criminal in nature is ex

post facto, and if civil in nature is retrospective, in violation of Sec. 13 of Article I of our 1945 Constitution; (2) that Sec. 9359.4 of the Act, providing that one judicially found to be a criminal sexual psychopath may be committed to the State Hospital for treatment, violates Sec. 17 (relator evidently means Sec. 19) of Article I of the Constitution, in that, the provision of the Act providing for a medical examination of defendant by appointed physicians is violative of the constitutional provision that "no person shall be compelled to testify against himself in a criminal cause"; and (3) that the Act is vio- lative [900] of the due process of law provision of our Constitution.

█ Is the inquiry and proceeding provided by the Act civil or criminal in character? As to that we can reach but one conclusion. Ordinarily a criminal proceeding is some step taken before a court against some person or persons charged with a violation of the criminal law. The purpose of a criminal proceeding is to punish. But this Act is but a civil inquiry to determine a status. It is cura- tive and remedial in nature instead of punitive. One of its purposes is the treatment and cure of a present and existing mental disorder. It recognizes and classifies a criminal sexual psychopath as one suffer- ing from "a mental disorder * * * with criminal propensities to the commission of sex offenses." The public policy of the State (as expressed in this Act) is to treat and cure such persons, not to punish them. Under the Act sex deviators are merely made subject to restraint and treatment because of their condition and their acts. One of the evident purposes of the enactment is to prevent persons suffering from this mental disorder, though "not insane or feeble- minded", from being punished for crimes they commit during the period of this mental ailment. In character the Act is not unlike stat- utes which provide for a civil inquiry into the sanity of a person. In principle and application it is not unlike our Juvenile statutes where- in certain minors, when charged with crime, are made a class apart and certain remedial substitutive procedures are provided for in lieu of their being prosecuted under the criminal laws. One purpose of the Act is to protect, treat and cure, and the State here is concerning itself with the future well being and return to normal living of a person so charged. Proceedings under the Act have none of the elements of a criminal proceeding. It is our conclusion that the Act is not criminal in character. State v. Thomas, 318 Mo. 605, 300 S. W. 823, Hirst v. Cramer, (Mo.) 195 S. W. (2d) 738, People v. Chap- man, 301 Mich. 584, 4 N. W. (2d) 18, 25, People v. Sims, 382 Ill. 472, 47 N. E. (2d) 703, Varholy v. Sweat, (Fla.) 15 So. (2d) 267, McGoldrick v. Downs, 53 N. Y. S. (2d) 333, Rowan v. People, 147 Fed. (2d) 138, In re Kemmerer, 309 Mich. 313, 15 N. W. (2d) 652. Inasmuch as the Act is civil in character the ex post facto provision of Sec. 13 of Article I of the Constitution is not violated. State ex

rel. Jones v. Nolte, 350 Mo. 271, 165 S. W. (2d) 632, 638, 16 C. J. S. Constitutional Law § 437, p. 889, 11 Am. Juris. § 351, p. 1179.

But what of relator's alternative contention that because the assault upon Charlotte Jane Edens is alleged to have taken place in June before the Act became effective on August 1, 1949, that the Act is retrospective? " 'Retroactive' or 'retrospective' laws are generally defined, from a legal viewpoint, as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." Lucas v. Murphy, 348 Mo. 1078, 156 S. W. (2d) 686, 690, 2 Cooley, Taxation, § 513, p. 1144, 2 Lewis-Sutherland, Statutory Construction, § 641, p. 1157, 50 Am. Jur. Sec. 482, p. 505. A statute is not retrospective because it merely relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of a person for the purpose of its operation. Dye v. School District No. 32, 355 Mo. 231, 195 S. W. (2d) 874, 879, 16 C. J. S. Constitutional Law, § 414, p. 857, State ex rel. Ross v. General Amer. Life Ins. Co., 336 Mo. 829, 85 S. W. (2d) 68, 74, Freeman v. Medler, (N. Mex.) 129 Pac. (2d) 342, Cox v. Hart, 260 U. S. 427, 43 S. Ct. 154, 67 L. Ed. 332. We have many times held that a statute is not retrospective in its operation within the constitutional prohibition, unless it impairs a vested right. McManus v. Park, 287 Mo. 109, 116, 229 S. W. 211, State ex rel. Jones v. Nolte, supra. Nor is an act retrospective if it but substitutes a remedy or provides a new remedy. McManus v. Park, supra. But no person can have a vested right in an unenforced penalty, which the State could enforce against him if it chose to do so. And the constitutional inhibition against retrospective legislation clearly does not include a law which extenuates or mitigates an offense theretofore committed. Continental Oil Co. v. Montana Concrete Co., 63 Mont. 223, 207 Pac. 116, Townsend v. Townsend, (Tenn.) 14 Am. Dec. 722.

Relator's contention that the Act is retrospective seems founded upon his argument that it "enlarges the punishment and aggravates the situation in which defendant (relator) finds himself because he could be punished for assault (upon Charlotte Jane Edens) even after he was imprisoned or confined as a sexual psychopath." He further argues that the maximum punishment upon the charge of assault could not exceed a year in jail (six months) and a fine of one hundred dollars (R. S. Mo. 1939, Sec. 4411), whereas, if adjudicated a criminal sexual psychopath he could possibly be detained under treatment for an indefinite period. But this Act is not criminal in nature and any detention thereunder is not a punishment. And the Act provides that if one so charged is adjudicated a sexual psychopath the court may either commit him for detention and treatment,

*or* the court may order him tried upon the pending criminal charge "as the interests of substantial justice may require." The Act specifically provides (Mo. R. S. A. 9359.7) that "Nothing in this act shall be construed as changing in meaning any portion of the criminal code, nor shall a finding of criminal sexual psychopathy under the provisions of this act constitute a defense in any criminal action." The Act is curative, remedial and civil in character. Any proceeding thereunder, not being punitive in character, could not enlarge or increase a punishment.

Upon oral argument here relator's counsel contended the words of the Act "when any person is charged with a criminal offense" should be construed to mean "when any person is charged with a sexual criminal offense." That contention must be disallowed. We cannot read out of the quoted words a meaning not found therein. However, in this case the pending criminal charge against relator is of a sexual nature. In any event, the General Assembly had a right to conclude (and obviously did) that the need for the detention and treatment imposed by the Act was greatest among sexual psychopaths predisposed to transgress any of the criminal laws. The Legislature is free to recognize degrees of harm. That body, in the exercise of the State's police power, plainly extended the application of the Act to cases where they deemed the need to be greatest and the evil most apparent. That the Legislature clearly had a right to do. People v. Chapman, supra, Minnesota ex rel. Pearson v. Probate Court, 309 U. S. 270, 60 S. Ct. 523, 84 L. Ed. 744, 126 A. L. R. 530, and annotation 126 A. L. R. 535, People v. Sims, supra.

In the instant case the Act relates to facts prior to August 1, 1949, and a portion of the requisites for action here antedate the effective date of the Act. But that does not make the Act retrospective. Those antecedent facts may be thus used to establish relator's status as of the effective date of the Act. Upon that date he was a "person * * * charged with a criminal offense."

The enactment of the Act declared a public policy of the State. By the Act the Criminal Sexual Psychopath is recognized and classified as "suffering from a mental disorder." Whether that public policy is wise or unwise is not for our determination. We cannot judicially invade the function of the General Assembly to explore that field. But much has been written upon the subject. Other states (among them, California, Illinois, Massachusetts, Michigan, Minnesota, Nebraska, Indiana and Ohio) have enacted similar legislation. See, Jackson, "Validity of Sex Offender Acts", 37 Mich. Law Review, p. 613; Allen, "Confinement of the Sexually Irresponsible", 39 Journal of Criminal Law and Criminology, p. 196, "The Legal Disposition of the Sexual Psychopath", 95 Univ. of Pa. Law Rev. 872; Rosenfeld, "Commitment of Sexual Psychopaths in Ohio", 2 Western Reserve Law Rev. 69; "Indiana Sexual Psychopath Statutes", 25 Ind. L.

Journal 186; Ravenscroft, "An Examination of the Nebraska Statute Providing for Commitment and Treatment of Sexual Psychopaths", Neb. L. Rev. 506; Sutherland, "The Sexual Psychopathic Laws", 40 Journal of Criminal Law and Criminology, p. 543.; Reinhardt and Fisher, "The Sexual Psychopath and The Law", 39 Journal of Criminal Law and Criminology, p. 736, Meagher, "The Psychopathic Criminal", 42 Medico-Legal Journal, p. 33; Dixon, "Psychiatric Angles of Criminal Behavior, 14 Oregon Law Rev. p. 352, and 39 Columbia Law Review 534. This particular psychopath, by this Act, is substantially classified with that group of insane persons who are incapable of distinguishing right from wrong as to the offense with which they stand charged and who, for that reason, may be found not guilty of the offense charged because of insanity. This Act may even protect from prosecution those sex offenders in that class of sex charges in which the law prescribes that capital punishment may be administered.

Thus the Act is clearly in extenuation and mitigation of offenses theretofore committed. Such legislation clearly falls outside of the constitutional section prohibiting retrospective laws. The reason for this ruling is soundly based. The General Assembly may enact into existence a certain penalty for a certain act. If that penalty be for an act criminal in nature the Constitution would clearly nullify a later enactment prescribing a more severe *penalty* for that offense than the one in effect at the time of the commission of a particular offense of that character. But acting in its sovereign capacity the State is not prohibited, by the constitutional provision, from forgiving any offense. It may repeal outright the original enactment which defined the offense and prescribed the penalty. Or it may enact new legislation substitutive in character, which lessens the penalty for offenses theretofore committed and for which the offender had not been tried. Under its police power the State may also enact a new procedure both curative in purpose and rehabilitating in objective, and which substitutes treatment and cure for punishment. (In effect the State did that when it enacted the Juvenile statutes.) This must be particularly true where (as to the instant Act) one purpose of the legislation is the protection of the public from indecent advances or criminal attack by those whom the State has the power to classify as mentally ill and the right to confine and attempt to cure. Under the doctrine of parens patriae the State has a sovereign right and duty of guardianship as to persons found to be non sui juris and dangerous to the health, morals and safety of its citizens, and to themselves. Hoyt v. Sprague, 103 U. S. 613, 26 L. Ed. 585, In the Matter of Ferrier, 103 Ill. 367, Ex parte Liggett, 187 Cal. 428, 202 Pac. 660, In re Dowdell, 169 Mass. 387, 47 N. E. 1033, Buck v. Bell, 274 U. S. 200, McIntosh v. Dill, 86 Okla. 1, 205 Pac. 917, 11 Am. Juris. Constitu-

tional Law, p. 1140, et seq. The Act is not retrospective, and we so rule.

We next consider relator's contention that the Act by authorizing a medical examination of the person against whom the petition may be filed violates the constitutional inhibition that "no person shall be compelled to give testimony against himself in a criminal cause." But no compulsory self-incrimination is authorized or warranted by the Act. The constitutional provision just above quoted (Sec. 19 of Article I) applies only to a criminal cause. But, as above ruled, this Act is but a civil inquest as to relator's present mental condition and sex deviations. It is clear that relator's contention is untenable and must be overruled. People v. Chapman, supra.

It is last contended that the Act violates Section 10 of Article I of the Constitution, the due process clause, because it permits "a man to be put on trial by one member of a medical staff of a State Institution and (in) a proceeding which can deprive him of his property and he is to submit to this without the benefit of a jury." We quote the above from relator's "Statement of Position" in his brief. It is not carried forward into his "Assignments and Authorities" nor his points relied on. Nor does relator mention this contention in his "Summary" or argument in his brief. Such violation of our Rules warrants our disregard of this contention, but under the unusual circumstances of this case, we consider it.

It is provided in the Act that after the appointed medical examiners have made an examination of the person charged, "if prima facie proof be made to the court of the criminal propensities to the commission of sex offenses of the person charged with criminal sexual psychopathy *and* if the report of at least one of the (two) examining physicians does establish the fact of a mental disorder to which such propensities are attributable in the person examined, the court shall order that a hearing be held" upon the petition. That provision touches only the preliminary determination as to whether there shall be a hearing upon the petition. But before the court may order the hearing upon the ultimate fact of whether the person charged is in fact such a psychopath, at least one of the examining physicians must have affirmatively reported to the court that the person charged has a mental disorder to which such sexual deviations are attributable, *and*, there must also be adduced prima facie proof of criminal propensities to the commission of sex offenses. The trial of the issue as to whether such person charged is such a psychopath may be before a jury. Obviously there is no denial of due process.

Denial of due process was one of the contentions made that a similar Act in Michigan was unconstitutional. In disposing of that contention in People v. Chapman, supra, the Supreme Court of Michigan, in part, said: "The two psychiatrists who made the examination and report provided for in the statute could not make a final deter-

mination that defendant was a criminal sexual psychopathic person. The psychiatrists' report is only for the help and guidance of the court in determining whether further proceedings should be conducted. Only the court or a jury, if demanded, could make a final determination as to whether or not defendant was a criminal sexual psychopathic person. We recognize that criminal sexual psychopathic persons for whom the statute seeks to provide, are a definite abnormal type, recognized by the medical profession, who require confinement, treatment, and care, both for their own protection and for the protection of the public. Section 1 of the statute sets a standard of guidance for the court or jury as the trier of the facts. ' The language of the statute is clear and definite, and does not deprive defendant of due process of law."

Due process of law implies and comprehends the administration of laws equally applicable to all under established rules which do not violate fundamental principles of private rights, and in a competent tribunal possessing jurisdiction of the cause and proceeding upon notice. It is founded upon the basic principle that every man shall have his day in court, and the benefit of the general law which proceeds only upon notice and which hears and considers before judgment is rendered and which renders judgment only after trial. This provision of our organic law guarantees that every one shall have his life, liberty, property and immunities protected by the general rules characteristic of, basic to and existing in our society under our system of jurisprudence. It contemplates an orderly proceeding adapted to the nature of the case and as to which any person to be affected shall have notice, an opportunity to be heard, and a chance to protect and enforce his rights before a tribunal with power to hear and rule his cause. A careful examination of this Act discloses that all those safeguards are therein provided for all who may be charged thereunder. See Minnesota ex rel. Pearson v. Probate Court, supra, State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N. W. 297. It follows that relator's contention that the Act denies due process of law is without merit and must be disallowed.

We have carefully examined the cases cited by relator. Under the instant circumstances they are not determinative and in nowise rule relator's contentions. It would serve no useful purpose to lengthen this opinion with a discussion of those cases.

 From our conclusions hereinabove stated, it follows that our provisional rule in prohibition heretofore issued must be and it is hereby discharged. It is so ordered. All concur.