**STATE of Missouri, Plaintiff-Appellant,**

v.

**Earl R. McDANIELS, Defendant-Appellant.**

No. 22735.

Kansas City Court of Appeals.

Missouri.

Nov. 4, 1957.

William A. Collet, Pros. Atty., Carrol C. Kennett, Asst. Pros. Atty., Kansas City, for appellant-plaintiff.

James S. Formby, L. Stanley, Braton, Kansas, City, for appellant-defendant.

CAVE, Judge.

The Prosecuting Attorney of Jackson County filed an information in the circuit court charging the defendant of rape by carnal and unlawful knowledge of a female child under the age of 16 years. Thereafter, the prosecutor filed a petition in the same court alleging that the defendant was a criminal sexual psychopath as defined by Section 202.700, and praying that a hearing be held to determine that issue in accordance with the provisions of Sections 202.-700–202.770 RSMo 1949, V.A.M.S.

Some evidence was heard, and the court found "that prima facie proof of the criminal propensities to the commission of sexual offenses has been made against defendant * * *"; and ordered the Director of the Division of Mental Diseases of the De-

partment of Public Health and Welfare to appoint two qualified physicians to make an examination of the defendant and report their findings to the court. Doctors Mullinax and Price of the St. Joseph hospital for the insane were appointed, and had the defendant under examination and observation for 30 or 40 days, and filed a written report, which is not subject to public inspection, Section 202.720. Thereafter, a second hearing was held and the doctors testified, and at the conclusion of the evidence, the court dismissed the prosecutor's petition and ordered the defendant to stand trial on the criminal charge.

In due time, the prosecutor and the defendant filed separate motions asking the court "to open its judgment * * * and find. and enter a judgment that defendant is a criminal sexual psychopath within the meaning and intent of the law * * * and commit him to State Hospital No. 1 at Fulton * * *"; or in the alternative, to set aside the judgment and grant a new trial. The court overruled both motions and the prosecutor and defendant each perfected his appeal.

Among other things, the appellants contend that the court erred in not finding the defendant was a criminal sexual psychopath; and erred in not ordering him confined in State Hospital No. 1 for treatment of such condition; and argue that this court should review the record and make such findings and orders, or direct the trial court to do so.

■■ The scope and purpose of this Act was fully considered by the supreme court en banc in State ex rel. Sweezer v. Green, 360 Mo. 1249, 232 S.W.2d 897, and by this court in State ex rel. Kirks v. Allen, Mo. App., 255 S.W.2d 144. It is settled that the Act is constitutional; that a proceeding thereunder is of a civil nature and not criminal; that it declares the public policy of the state; that the general purpose of the Act is to detain, treat and care for a person found to be a criminal psychopath.

with the hope his condition will improve; and also to protect the public against his depredations.

■ There are two principal issues to be decided in a proceeding of this kind. First, whether the defendant is a criminal psychopath. If it be properly found that he is not, then the petition should be dismissed and the prosecution proceed. However, if the court or jury finds that the defendant is a criminal psychopath, then under Section 202.730 the court, in the exercise of its discretion, "may commit" the defendant to State Hospital No. 1 for detention and treatment; *or* may order such person to be tried upon the criminal charge against him, "as the interests of substantial justice may require".

On the issue of whether the defendant was a criminal sexual psychopath there was evidence that he had frequently sexually abused a little girl from the time she was 7 years of age until she was 13, at about which time he was arrested in a hotel room in company with her; and that during the same period he had abnormal sexual relations with the little girl's brother, who was one year older than she. There was also evidence of a prior sexual abuse of a girl 10 years of age.

Dr. Mullinax, and the members of his staff, had the defendant under examination and observation for 30 or 40 days. He testified that the defendant had average, if not above average, intelligence; was very cooperative; but "I think emotionally the man is sick * * *; we felt that he should be under the care of some psychiatrist. If he is frustrated he reacts rather aggressively and I would say hostile. He could be dangerous to others if some one should cross him * * *. I think his temper is too much. His emotional disability, I think, has been of good long while * * *. If he is left alone to be on the outside I am afraid he would repeat what he has been accused of or attempt to do what he has done. We studied quite awhile, the staff and ourselves, discussed his case in the staff room

* * * and we felt that our request and our opinion and our recommendation is that he be sent to Fulton where he would be under the care of a psychiatrist. I feel it would be a detriment and we would get the wrong results if he were put in prison and we would recommend to you that he be considered to be sent to Fulton where he would be under the care of a psychiatrist for detention and care for I am afraid he would repeat this act if he were allowed to be out". The doctor gave it as his opinion that the defendant was a sexual psychopath as contemplated by the statute; that the defendant "needs care, he needs treatment, and that is why I feel he should be sent to Fulton where he can get it. I consider the man a sick man". He stated that the penitentiary did not have a psychiatrist so that the defendant could be treated, if necessary, in that institution. "Sending this man to the penitentiary, I think, would be detrimental to him and not a help, he wouldn't get any consideration. What he needs is help."

The trial court and the doctor had a lengthy discussion of the purposes of the law, the benefits, if any, of psychiatric treatment, and the court finally asked the doctor: "What would be your best judgment as to the length of time, * * * that this man would have to be down there for treatment, not to cure the situation, but to better the situation? A. I don't believe I could honestly answer that. * * *"

Dr. R. P. Price concurred in the opinions given by Dr. Mullinax.

The evidence also discloses that the defendant held a responsible position as an adjuster for an insurance company, and was reasonably successful in business. He had a distinguished service record as a marine in the last war.

█ The court did not make a specific finding whether or not the defendant was a criminal sexual psychopath. It merely dismissed the prosecutor's petition and ordered the defendant tried on the criminal charge.

The court should have made and entered of record a specific finding on the principal issue being tried, i. e. whether the defendant was or was not a criminal sexual psychopath.

However, that failure does not require a reversal and remanding of the cause. This for the reason that, as stated supra, Section 202.730 provides that if the defendant *is found* to be a criminal sexual psychopath, by the court or a jury, then the *court may* make either of two orders: (1) *"may commit"* the defendant to State Hospital No. 1 for treatments; (2) "or *may* order" the defendant to be tried upon the criminal charge, as the interests of substantial justice may require. It is clear that the Act does not mandatorily require a court to commit a defendant to the state hospital for treatment upon a *finding* that he is a criminal psychopath. It gives the court a wide discretion in determining what shall be done with the defendant, even though he be found a criminal psychopath.

█ It is our opinion that the clause, "as the interests of substantial justice may require", is the lodestar in determining whether the defendant be committed to the hospital or be ordered to stand trial. In other words, the clause relates to both of the above orders which the court may make. In exercising this discretion, the court must keep in mind not only the interest of the defendant, but the rights and interest of the public to protection from the future acts of such a person.

█ This type of legislation is of recent origin. An interesting review of such Acts is found in 19 Kansas City University Law Review, page 131. Missouri adopted its Act in 1949. Section 202.700 defines a sexual psychopath as a person suffering from a mental disorder, but who is not insane nor feeble minded; that such mental disorder must have existed for a period of not less than one year prior to the filing of the petition for commitment; that the person must have criminal propensities to the commis-

**46**

sion of sexual offenses; and be considered dangerous to others. This definition, of necessity, must be and is general in scope. It is dealing with an area of mental abnormality about which the medical profession, psychiatrists and neurologists are not agreed as to what constitutes a criminal sexual psychopathic personality, or whether such a condition can be corrected. At best, it is a matter of opinion by those trained to make such diagnosis. But it is a well known fact that those specially trained do not always arrive at a correct diagnosis, or concur in the diagnosis of some other specialist.

Certainly the trial court was not compelled to adopt the opinion of the doctors or to follow their recommendations, even though there was no contradictory evidence.

 Legislation of this kind demonstrates a commendable effort on the part of the state to aid those persons who are so abnormal, but not insane, that they constitute a menace to others, as well as themselves. The courts should administer the Act with a sound, but a merciful, discretion in order to accomplish the humane and benevolent purposes contemplated.

It should also be noted that Section 202.-750 provides, " * * *, nor shall a finding of criminal sexual psychopathy under the provisions of said sections constitute a defense in any criminal action". In other words, a mental condition which would support a finding that a person is a criminal psychopath would be no defense in the prosecution for a criminal offense committed while in such a mental state. Thus this Act, to be of any benefit, must receive a fair and just administration by the courts and the prosecuting officials, in the light of the facts and circumstances of each case.

We are unwilling to say that the trial court abused its discretion in ordering the defendant tried on the criminal charge. Even if the court had specifically found that the defendant was a sexual psychopath, nevertheless, it could order him tried criminally. This right of discretion par-

takes of the same right of discretion to parole a person after conviction. We know of no case in which an appellate court has held that a trial court's discretion to parole had been abused.

In his brief, the prosecuting attorney seems to be of the opinion that Section 202.-710 requires him to file a petition if it comes to his attention that a defendant is or may be a criminal psychopath. It is true that the section does provide that the prosecutor "shall file" a petition. But in State ex rel. Kirks v. Allen, Mo.App., 255 S.W.2d 144, we held that the word "shall" is not a mandatory direction to the prosecuting attorney to file such petition, regardless of the sufficiency of the information furnished him. He may exercise his discretion in determining what course to pursue.

The order of the trial court is affirmed. All concur.