STATE of Missouri, Respondent,

v.

Ervin Franklin CRABTREE, Appellant.

No. 54694.

Supreme Court of Missouri, Division No. 2.

Sept. 14, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 12, 1970.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Gerald D. Morris, St. Louis, for defendant-appellant.

MORGAN, Judge.

Defendant has appealed from the judgment of the trial court finding him to be a criminal sexual psychopath as defined in Section 202.700, RSMo 1959, V.A.M.S.

The information, by which defendant was originally charged with a criminal offense, alleged that he "did wilfully, unlawfully and feloniously indulge in degrading, lewd, and immoral practices with a minor." This generalization was supported by specific allegations of a factual nature.

Soon after his arrest, defendant obtained counsel, and has been represented capably at all stages of the criminal proceeding as well as in the ancillary matter with which we are now specifically concerned.

At arraignment on the criminal charge, defendant entered a "plea of not guilty by reason of mental disease or defect excluding responsibility for the offense charged." The court ordered a psychiatric examination as provided in Section 552.020.

Thereafter, the state initiated proceedings under Chapter 202 by filing a petition wherein it was alleged that defendant was a criminal sexual psychopath as defined in Section 202.700 thereof, to-wit: "All persons suffering from a mental disorder and not insane or feeble-minded, which mental disorder has existed for a period of not less than one year immediately prior to the filing of the petition provided for in section 202.710 coupled with criminal propensities to the commission of sex offenses, and who may be considered dangerous to others, are hereby declared to be 'criminal sexual psychopaths'." The court notified defendant of the petition as provided in Section 202.720, and advised that, "The object of said hearing is to determine whether you shall be medically examined, by whom and

when and where such examination shall be conducted." In compliance therewith, defendant appeared with counsel; and subsequent thereto, the court entered a finding which concluded with: "Matter is heard, testimony adduced and the Court does find prima facie evidence of the defendant's criminal propensities to the commission of sex offenses * * *" The record does not contain the testimony referred to, but there is no denial this initial hearing was held nor is there any contention the testimony was insufficient to sustain the finding. As provided by paragraph (2) of Section 202.720, the court appointed two qualified physicians to examine defendant and report their findings in writing.

In view of defendant's attack, not only on the further rulings of the trial court but on the statutory provisions providing therefor, it is better to quote the remaining portions of Section 202.720, which control the procedure to be followed on receipt of the medical findings.

3. If *prima facie* proof be not made to the court of the criminal propensities to the commission of sex offenses of the person charged with criminal sexual psychopathy or if the report of at least one of the examining physicians does not establish the fact of a mental disorder to which such propensities are attributable in the person examined, the court shall dismiss the petition.

4. If *prima facie* proof be made to the court of the criminal propensities to the commission of sex offenses of the person charged with criminal sexual psychopathy and if the report of at least one of the examining physicians does establish the fact of a mental disorder to which such propensities are attributable in the person examined, the court shall order that a hearing be held on the petition and that at least twenty days' written notice of such hearing be served upon the person charged in said petition or

his counsel of record. The judge may at his discretion, and at the request of the person charged in the petition shall, provide for the determination of the issue of criminal sexual psychopathy by a jury. At such hearing the examining physicians appointed or designated by the court may testify as to their examination or examinations of the person charged and the results thereof, but their report or reports filed in court as herein provided shall not be admissible in evidence against the person charged. Evidence of past acts of sexual deviation by the person charged shall be admissible at the hearing. The person charged shall be entitled to counsel and shall have the right to present evidence in his behalf and shall have full rights of appeal.

First, defendant contends that he was denied due process for the reason quoted paragraphs (3) and (4) "are so contradictory, conflicting, and vague that defendant, his counsel, or the court were not adequately advised so as to be able to determine whether or not sufficient grounds existed under the statute to permit the State to proceed upon its petition against defendant." In other words, it is argued that under paragraph (3), the trial court was required to dismiss the petition when one physician could not conclude defendant came within the statutory definition, while paragraph (4) authorized a hearing if only one medical report was affirmative. The alleged denial of due process is premised on the statement, "reasonable minds cannot disagree that minimum standards of fairness require that defendant should know whether, in order for the petition against him to be dismissed, he must get a favorable mark from just one of the doctors; or must he favorably impress both of them?" Necessarily, for the moment, we assume one report was affirmative and the other negative. In State ex rel. Sweezer v. Green, 360 Mo. 1249, 232 S.W.2d 897, 903,

this court rejected a similar argument. However, we have considered paragraphs (3) and (4), again, and do not find them ambiguous or contradictory. Paragraph (3) is written with a negative approach and provides for mandatory dismissal "if the report of at least one of the examining physicians does not establish the fact of a mental disorder * * *." We, again, hold that such language dictates dismissal only when both reports are negative. Paragraph (4) is consistent therewith and calls for a hearing "if the report of at least one of the examining physicians does establish the fact of a mental disorder * * *." We cannot accept the construction placed on such statutory language by the defendant.

■ Second, argument is made that defendant is denied due process "when denied the right to a hearing and cross-examination of said physicians regarding their examination and conclusions" prior to such reports being considered by the trial court in resolving whether or not there will, in fact, be an adversary hearing on the issue of defendant's mental state. However, defendant concedes this argument was denied in State v. Green, supra, wherein this court said, loc. cit. 903: "That provision touches only the preliminary determination as to whether there shall be a hearing upon the petition." As expressed by the Supreme Court of Michigan in People v. Chapman, 301 Mich. 584, 4 N.W.2d 18, loc. cit. 26: "The two psychiatrists who made the examination and report provided for in the statute could not make a final determination that defendant was a criminal sexual psychopathic person. The psychiatrists' report is only for the help and guidance of the court in determining whether further proceedings should be conducted. Only the court or a jury, if demanded, could make a final determination as to whether or not defendant was a criminal sexual psychopathic person. We recognize that criminal sexual psychopathic persons for whom the statute seeks to provide, are a definite abnormal type, recognized by the medical profession, who require confinement, treatment, and care, both for their own protection and for the protection of the public. * * * The language of the statute is clear and definite, and does not deprive defendant of due process of law." Nevertheless, it is argued that, "He has no right to a hearing and no right to cross examine the doctors to see on what basis they reached their decision and no right even to see if the judge understands the doctors' report." No suggestion is made as to how the comprehension of the trial judge would have been tested other than by the review now given, and the requested right to cross-examine the physicians prior to submission of their written reports can only be premised on the assumption they might have been encouraged to change their conclusions. If such lack of integrity is present, it may be fully explored by deposition or by cross-examination at the later hearing on the issue in question. Defendant's argument, in essence, is that he was handicapped in his effort to avoid the hearing itself. This position cannot be sustained. For instance, as to the original criminal charge filed by the prosecutor, defendant was subjected to the immediate burden of defending himself. Administration of justice requires the decision to initiate proceedings be placed with some official. The statutory procedure now questioned provides for a much more cautious approach, and subjects the decision of the prosecuting official to the screening process by the trial judge as detailed in the statutes. There must have been a prima facie showing the allegations of the petition were correct prior to consideration being given to the need for medical examinations. Necessarily, any proceeding by the state against an individual, be it for punishment or treatment, must have a beginning, and the approach provided to carry out the objectives of the questioned statutes is more cautionary and protective of individual rights than in many instances where the state must inquire into the activities of an individual. For example, Chapter 552, pertaining to mentally ill persons in criminal cases, makes it mandatory for a trial judge on his own motion to order a psychiatric

examination if he has reasonable cause to believe that the accused has a mental disease. In addition, even if it is ignored that the present proceeding is of a civil nature with the ultimate objective of providing care, treatment and hopefully rehabilitation for the individual involved, State v. Mc-Daniels, Mo.App., 307 S.W.2d 42, the necessity of protecting the public from such depredations compels some procedure for inquiry into the mental state of the alleged offender. The illusory perfection sought by the defendant is neither practical nor required, and we, again, rule that the procedure followed did not deprive defendant of due process.

■ Third, it is contended that defendant's right against self-incrimination was violated when he was compelled to submit to an examination. The attack is not against the examination itself, but that in seeking to determine if an individual has a mental defect, "It is common knowledge that defendant's mentality could not be tested without an observation of the working of his mental process, his emotional responses, and his attitude toward socially acceptable patterns of living," thus, requiring defendant to risk forfeiture of his right not to incriminate himself. See State ex rel. North v. Kirtley, Mo., 327 S.W.2d 166, 168, wherein it was held that the constitutional privilege against self-incrimination is available to witnesses before any tribunal and in any proceeding including those of a civil nature. However, the argument is somewhat academic under the facts of this case. First, for the reason there is no showing any compulsion was used to force defendant to answer any inquiries of the physicians. Second, he did not incriminate himself by anything in the nature of an admission, but, to the contrary, denied any misconduct whatever "with great indignation." For these reasons, it is not necessary to discuss the possibility of waiver by reason of defendant first raising the question of sanity in the trial court, State v. Swinburne, Mo., 324 S.W.2d 746[4], or his failure to raise the point of self-incrimination

prior to the present appeal. Lack of any compulsion is evidenced by the report of Dr. Flynn, wherein, he reached no conclusion as to defendant's mental condition for the reason "that he [defendant] would rather conceal this information from me rather than discuss it with me." In addition, the report of Dr. Shuman included the statement, "There is no admission of guilt on his part * * *" The report also expressed the opinion, "There are no tests which can be done that would actually pinpoint this type of diagnosis." However, after considering the history of defendant's conduct, based, in part, on an examination of one of the daughters allegedly sexually abused, he concluded "that the propensities to the commission of criminal sexual offenses is an established certainty." The propriety of the physician considering defendant's history is challenged, but we find nothing in the relevant statutory provisions prohibiting consideration of such. It is an accepted fact that correct medical diagnosis usually requires consideration be given to the patient's history. Also, the procedure provided for necessarily contemplates acceptance of the physician as an "expert" witness who is legally and professionally competent to base an opinion on all available evidence.

Lastly, it is submitted that the finding and judgment of the trial court is contrary to the weight of the evidence. At the final hearing, defendant testified and denied any misconduct and specifically every sexually related act of which he was accused. Several of his relatives testified they had not heard of such incidents. For the state, defendant's wife and four daughters testified, but the testimony of one daughter was stricken when she became so emotionally upset the court found her unable to continue. The daughters were the oldest of fifteen children, and they testified at length how their father had taken sexual liberties with each from the age of approximately five to shortly before trial. We need not set out the sordid details establishing the following: incestuous conduct covering fondling of the privates of each girl from

an early age, kissing of breasts and culminating in sexual intercourse near puberty; encouraging oldest to engage in oral sodomy and prostitution (including division of proceeds with defendant); requiring each of two daughters to watch while he had intercourse with the other; and bringing home what was referred to as a "party" dog with which he encouraged his wife to attempt some sexual practice. With such conflicting testimony, we necessarily give due deference to the opportunity of the trial court to see and hear the witnesses, State ex rel. Wright v. MacDonald, Mo.App., 330 S.W.2d 175, and it is sufficient to say that we do not consider his findings to be erroneous.

The judgment is affirmed.

All of the Judges concur.