## QUIGLEY *v.* HAMMOND.

Opinion delivered June 3, 1912.

1. JUDGMENT—WHEN VACATED FOR FRAUD—To vacate a judgment for fraud, the party seeking such relief must make at least a *prima facie*

showing of a valid defense to the action in which the judgment was obtained. (Page 458.)

2. BILLS AND NOTES—DEFENSE.—It is no defense to a suit on a note that, according to a verbal understanding between the maker and the payee, the notes were not to be due at the time therein specified. (Page 458).

Appeal from Polk Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is an appeal from the judgment of the circuit court of Polk County rendered on the 20th day of April, 1911, setting aside a judgment that had been rendered by that court on November 7, 1908, in favor of the appellant against the appellee in the sum of $50,000. The ground alleged in the complaint for vacating the judgment is "fraud and artifice practiced by R. M. Quigley in obtaining the same." The facts upon which the alleged fraud is based are specifically set forth, and the appellee also alleged that she had a meritorious defense to the cross complaint upon which the judgment was obtained, and set up the alleged facts constituting it.

The appellant denied the specific allegations of fraud as made in the complaint, and denied that the appellee had a meritorious defense.

The trial court found the facts to be as follows:

"That on November 8, 1906, R. M. Quigley purchased from Frank S. Hammond all the interest of Frank S. Hammond in the construction company and the St. Louis company for thirty-seven thousand ($37,000) dollars; that the contract of purchase was reduced to writing; that four notes were given for the purchase price, three (3) for ten thousand ($10,000) dollars each and one (1) for seven thousand ($7,000) dollars, all falling due August 8, 1907; that Quigley and Frank S. Hammond executed the written contract, and William Kenefick guaranteed its performance on the part of Quigley; that the four notes were executed by R. M. Quigley and indorsed by Kenefick; that Alexander New represented R. M. Quigley in this transaction, and John T. Harding represented Hammond; that New wrote the contract and wrote the indorsement or guarantee on the back of the contract; that shortly after the time, in contem-

plation of death, Frank S. Hammond indorsed the notes to
Mary K. Hammond, his wife, the plaintiff herein, who held
them until they were finally paid by defendant; that payment
was demanded of Quigley at the time of the maturity of the
notes, but that said notes were not paid, and they were prop-
erly protested; that on or about the 21st day of August, 1907,
a suit was filed on said notes at Independence, Jackson County,
Missouri, against Quigley and Kenefick; that plaintiff failed
to get service on Quigley on account of his absence from the
State, and that Kenefick left for Europe about that time;
that constructive service was had on him; that in this liti-
gation and all negotiations Alexander New represented the
interest adverse to Mary K. Hammond, and that Harding
represented her interest; that, after a conversation between
Harding and New, the cause was continued at the September
term of the Independence court to the December term; that New,
representing said interest, forced a continuance of said cause
over plaintiff's objections; that about the 26th day of Decem-
ber, 1907, plaintiff, having failed to get service on defendant
Quigley in Missouri, filed a suit on the same notes and matters
in the Polk County Circuit Court of Arkansas, against Quigley
and Kenefick, and contemporaneously filed a like suit at Beau-
mont, Texas; that said suits were filed solely for the purpose
of getting service on Quigley and collecting said notes, and
for no other purpose; that said suits were filed by counsel
and upon counsel's judgment, and were not filed with malicious
intent and for the purpose of harassing or injuring defendant
Quigley; that no service was had upon Kenefick in either of
the last-mentioned suits; that on the 10th day of January,
1908, and some six days before the return time of said suit
in Polk County, Arkansas, defendant Quigley filed his answer
and counterclaim: that on or about the 12th day of February,
1908, Alexander New called on Harding at his office in Kansas
City, Missouri, for the purpose of paying or settling the suits
above mentioned; that, as a result of said conference, all of
said suits were settled by defendants paying one-half of the
amount in cash plus the interest and one-half in notes; that
said notes were signed by Quigley and indorsed by Kenefick,
and that in said settlement it was agreed that Quigley would
pay one-half of all the costs that had accrued in the cases at

Independence, Missouri, Mena, Arkansas, and Beaumont, Texas; that it is not clear whether Quigley was present at the settlement, but that, if he were not present, he knew of the settlement, participated therein, negotiated with New during the settlement, and acquiesced therein; that he did deliver or cause to be delivered a check in payment of the one-half of the amount involved in said suits, and executed and caused to be delivered the renewal notes for the other half and caused to be paid one-half of the cost in all three cases *plus* the protest fee, amounting to ten ($10) dollars; that Harding in said negotiations and settlement; represented the Hammond interest and New represented Quigley and the above interest; that Quigley was interested in all three of the cases, and received the benefit of the settlement; that, at the time of the settlement of these three cases, neither New nor Harding knew of the counterclaims having been filed at Mena, and that neither plaintiff nor her representative knew that Quigley had any claim of any kind against her or of any defense to the notes, nor had any reason to believe there was any such claims or defense; that Quigley at the time of said settlement concealed the fact of his counterclaim having been filed, and the settlement between New and Harding was considered by both to be a full settlement of all matters between Mary K. Hammond and Quigley and Kenefick, and that all said cases should be dismissed.

"That, pursuant of said agreement and settlement, Harding the following day mailed dismissals of each of the cases to the clerk of the several courts and requested the dismissal to be entered; that, pursuant to the agreement, he inquired and ascertained the amount of costs in each of the cases, and that thereafter Quigley paid or caused to be paid through New one-half of said costs; that plaintiff and her representatives, relying upon the settlement, was led to believe that all matters and controversies growing out of the notes sued on and the contract of sale and matters between the parties were settled; that thereafter, on or about the 21st day of April, 1908, Quigley, by local counsel at Mena, objected in court to the dismissal of said suit pending at Mena, and thereupon the court declined to dismiss said cause; that thereafter defendant Quigley caused an amendment to his

counterclaim to be filed and set up in substance that the notes sued on had been fully paid, whereupon the cause was continued to the next term of the court; that at the next term of the court, towit, on the 7th day of November, 1908, a default judgment was rendered against plaintiff, and in favor of defendant, for fifty thousand ($50,000) dollars for the malicious filing and prosecution of said suit on said notes; that on or about the .................... day of March, 1910, defendant Quigley fied a suit in the United States district court at Kansas City, against plaintiff, on said fifty thousand ($50,-000) dollar judgment, and that the filing of said suit was the first notice or intimation that plaintiff or her attorneys had that the defendant Quigley had filed a counterclaim or an amendment thereto or objected to the dismissal of said cause, or had taken any other steps in said cause of action, or that they had procured a judgment thereon; that neither plaintiff nor her counsel knew that Quigley had any counsel other than Alexander New, and the evidence does not show that local counsel, Norwood and Alley, knew that Quigley had other counsel than themselves; that there was no evidence that defendant Quigley had local counsel in said cause; that neither plaintiff nor her attorneys did anything or omitted to do anything that tended to show that they were negligent, but, on the contrary, exercised all the diligence that could be expected of a prudent person and prudent attorneys; that the acts and omissions of defendant misled the plaintiff and her counsel, and constitute a legal fraud, and by reason thereof she and her representatives were led to believe, and did believe, that all matters between plaintiff and defendant were settled and closed, and that by reason thereof this judgment was had against her without her day in court.

"The court finds that immediately upon the discovery of the judgment plaintiff filed this bill in the court, properly verified.

"The court further finds that the plaintiff has a valid defense to the counterclaim and each item thereof."

*Hal L. Norwood, J. I. Alley, E. J. Lundy* and *Frank H. Haskins,* for appellant.

1. Plaintiff has failed to show any acts on the part of defend-

ant which constitute fraud. 165 Mass. 178. Black on Judgments, (2 ed.) (1902), § 369; 45 Ill. App. 204; 25 Ga. 244.

2. Plaintiff's trouble was due to the fact that they neglected to employ local counsel to keep track of their case, and was not caused by fraud on the part of the defendant. This will not justify setting aside the judgment. 101 Ill. App. 435.

3. Even where a party is misled by statements of the clerk of the court, so that he fails to make a defense, he can not have the judgment set aside, because his own negligence was the cause of the judgment being rendered against him. 43 Ark. 107.

4. It is not sufficient that the judgment worked an injustice on the party complaining, or that he had a good defense. 63 Ga. 490; 61 Tex. 412; 43 Ark. 107.

5. A judgment will not be set aside because the party complaining was misled by relying on statements of the opposite party unless he also shows that there was a necessity for his relying on those statements. 25 Ga. 244.

6. Even though there may be fraud on the part of the party procuring the judgment, and the judgment works an injustice, still it will not be set aside unless the party seeking to set it aside shows that he was entirely free from negligence. 101 Ill. App. 435; 63 Ga. 490; 73 Ill. 205; 19 Ala. 224; 61 Tex. 412; 45 Ill. App. 204; 67 Cal. 298; 27 N. J. Eq. 102; 43 Ark. 107; 61 U. S. 156.

7. Delay in suing out execution until appeal time has passed is not fraud. 165 Mass. 178.

8. The court erred in refusing to permit Quigley to testify as to the supplemental verbal agreement made at the time the contract of November 8, 1906, was entered into for the purpose of showing that the parties all recognized the verbal agreement and that the alleged settlement of February 12, 1908, in Kansas City was only the carrying out of the supplemental verbal agreement.

9. Plaintiff has failed to prove that she has a meritorious defense to the action on its merits. Until this is done, the judgment can not be set aside. 94 Ark. 347; 50 Ark. 458; 83 Ark. 17; 84 Ark. 527; 90 Ark. 44; 126 N. W. 515; 86 Neb. 847; 88 N. E. 564; 240 Ill. 171; 111 S. W. 131; 131 Mo App.

245; 102 N. Y. Supp. 827; 17 Am. & Eng. Enc. of Law (2 ed.), page 846, with cases cited. Kirby's Digest, § § 4433 and 4434.

*Collins & Collins, W. M. Pipkin* and *McCune, Harding, Brown & Murphy,* for appellee.

1. The judgment was properly set aside for fraud. Kirby's Dig., § 4431. A valid defense was alleged and shown. *Id.,* § § 4433-4; 73 Ark. 286; 54 Ark. 3, 541; 63 Ark. 325; 23 Cyc. 930; 117 U. S. 674; 94 *Id.* 658; 51 Mo. 77; 70 Hun 199; 20 Conn. 554; 7 Cranch 336; 23 Cyc. 99; 98 U. S. 24; 40 Ga. 209; 47 Md. 282; 14 Ark. 362; 66 *Id.* 141; 68 *Id.* 495; 73 *Id.* 444; 75 *Id.* 425; 83 *Id.* 511; 81 *Id.* 51; 83 *Id.* 21; 90 *Id.* 170.

2. Only a *prima facie* showing of a good defense was necessary. 81 Ark. 21.

3. There was no negligence. 165 Mass. 78; 1 Black on Judg., (2 ed.), § 368-9; 45 Ill. App. 204; 25 Ga. 244; 101 Ill. App. 435; 50 Ark. 458; 83 Ark. 17.

WOOD, J., (after stating the facts). The findings of fact by the trial court are correct. Mr. New testified that "the Kenefick-Hammond-Quigley Construction Company was a close corporation, more in the nature of a partnership between Kenefick, Hammond and Quigley, only it was the corporate name, and, when Hammond got sick so that he could not do his part of the work, Kenefick and Quigley took over Hammond's stock." His testimony shows that he represented Quigley and Kenefick in the transaction that involved the purchase of the stock for which the notes of Quigley, indorsed by Kenefick, were executed. He prepared the contract, and his testimony also shows that he represented the same parties in the meeting that was had at Kansas City, February 12, 1908, at which were present Walter Hammond and John. T. Harding, an attorney representing appellee, and Alexander New, an attorney representing Quigley and Kenefick.

The appellant contends that the meeting of February 12, 1908, was held for the purpose of making a partial payment on the $37,000 notes, and of giving new notes for the balance, and the testimony of appellant himself thoroughly sustains the contention. But, on the other hand, the testimony of Walter Hammond, and of John T. Harding, and of New, sustains the contention of appellee that the meeting of February 12, 1908, was for the purpose of settling all suits

between appellant and appellee. Concerning this alleged settlement, New testified as follows:

"I do not think Mr. Quigley went into detail with me regarding the suits at Beaumont and Mena. I just knew that he had been sued at both of these towns. I learned it from Mr. Quigley. He gave me no details at all that I can recall at this time. I do not believe I remember how many conferences were held regarding the settlement of the $37,000 suit—along about February, 1908. There were several, I think. We were trying to make the best settlement and to get all the time we could, and it ended up by Hammond— Walter A. Hammond—who seemed to be the spokesman for Mrs. Hammond, agreeing to take half in money and give time on the other half. I do not recall at this time how much time there was given on the other half. It is possible there were just two conferences held. Quigley was present at all of them except, I think, there was one talk I had with Hammond in trying to get little better terms if I could, but at the final conferences he was there because he was the man that was to sign the notes and checks. Mr. Quigley signed the two notes. My recollection is that the settlement was made in the evening after supper at Mr. Harding's office in the Scarritt building, and it was all agreed upon and I think Mr. Quigley signed the notes, and my best recollection is, although I would not be positive about it, but my best recollection is that Quigley also signed the checks, and either left them with me to get Mr. Kenefick's signature, or got Kenefick's signature himself, and returned them to me to be delivered to Mr. Harding. I have never, in Mr. Quigley's strictly personal matters, been his attorney, but this matter was, in a sense, a company matter, and in the negotiations I assumed I was representing Mr. Quigley and Mr. Kenefick, and made the settlement on that theory, and Mr. Quigley signed the notes and signed the check. I could not undertake to recall the words used regarding the dismissal of any suits; we all talked back and forth, and my understanding was that all suits were to be dismissed and the costs were to be cut in half, each side paying one-half. I do not recall the exact words. I do not recall what Quigley said on the subject, any more than I do what the others said. We were all talking,

and we were settling these lawsuits, settling everything but the costs, and we could not settle them because we did not know the amount, and Mr. Quigley said when we found the amount Mr. Hoffman would send a check for it, and he sent a company's check which I turned over to Mr. Harding. I do recall that at the settlement in Mr. Harding's office new notes were to be given for one-half of the amount, and that one-half of the amount was to be paid in cash, or its equivalent, checks; that one-half of the costs were to be paid by each side, and the suits at Independence, Mena and Beaumont were to be dismissed. There may have been other things said back and forth that I might recall if questions were put to me. I do not recall that Mr. Quigley, at that meeting, said anything about dismissing any suit. What I recall was said was that the suits were to be dismissed, that is the suits at Mena, Independence and Beaumont. The counterclaim was in no way referred to in this settlement that I can recollect. I can not recall the exact words that were used in this connection."

The testimony of Walter Hammond shows that at the conference of February 12, after the check for the half was received by him for the appellee and the notes for balance executed and delivered to him by New, representing Quigley and Kenefick, "New stated to Harding to dismiss the cases."

The testimony of Harding, the attorney representing appellee, corroborates the testimony of New.

The testimony of appellant shows that at the conference of February 12, 1908, in Kansas City, nothing was ever brought up about appellee's indebtedness to him. He did not say then that he had any claim against her for the reason that he "did not want to open up any old sores at all."

Without going further into detail in setting out or commenting on the testimony, let it suffice to say that the court was warranted in the conclusion "that the acts and omissions of defendant misled the plaintiff and her counsel," causing them to believe "that all matters between plaintiff and defendant were settled and closed." The court was also thoroughly correct in the conclusion that the acts and omissions of appellant constituted a legal fraud in the procurement of the judgment against appellee, for which same should be vacated.

The authority for vacating a judgment obtained by fraud is found in section 4431, Kirby's Digest, subdiv. 4; *Womack* v. *Womack*, 73 Ark. 286; *Parker* v. *Bowman*, 83 Ark. 511; *Wood* v. *Stewart*, 81 Ark. 51; *Boynton* v. *Ashabranner*, 75 Ark. 425; *James* v. *Gibson*, 73 Ark. 444; *Chambliss* v. *Reppy*, 54 Ark. 539.

To vacate a judgment for fraud practiced by the successful party in obtaining it, the party seeking such relief must make at least a *prima facie* showing of a valid defense to the action in which the judgment was obtained. Kirby's Digest, § 4434; *Simpson & Webb Furniture Co.* v. *Moore*, 94 Ark. 347; *Martin* v. *Gwynn*, 90 Ark. 44; *Broadway* v. *Sidway*, 84 Ark. 527; *Knights of Maccabees of the World* v. *Gordon*, 83 Ark. 17; *State* v. *Hill*, 50 Ark. 458.

In the seventh paragraph of the cross complaint the appellant alleged that all of the suits instituted by appellee against him were for the "malicious purpose" of injuring his credit. The judgment herein sought to be vacated was bottomed on the above paragraph, for it recites the following: "And the court, after hearing the evidence of the witnesses, finds that the complaint filed herein by Mary K. Hammond was without cause, and was maliciously done for the purpose of damaging and injuring the said R. M. Quigley, and that the said R. M. Quigley has sustained damages in the sum of fifty thousand dollars because of the filing of the complaint herein and the institution of this suit against him." Conceding, without deciding, that the seventh paragraph states a cause of action, it is only necessary to determine whether or not appellee shows a meritorious defense to the seventh paragraph. It could serve no useful purpose to discuss the facts in detail. The evidence shows that appellee brought her suit against appellant to recover on notes that represented a just debt, which appellant had failed to pay at maturity, and that her suits were brought, not to embarrass or injure appellant, but to collect a debt which he did not deny, and which he afterwards paid. His only alleged defense to appellee's suit on the notes was that, according to a verbal understanding and agreement between him and the payee, the notes were not to be due and were not to be paid at the time specified therein, but were to be extended. This part of the answer stated no defense at all.

It was clearly demurrable. No proof could have been made to sustain it, for such proof would have varied the terms of the written contract.

The evidence shows conclusively that appellee did not bring suit on the notes "with the malicious intent and for the purpose of harrassing or injuring appellant," but "solely for the purpose of getting service on" him "and collecting the notes," as the court found.

The court was likewise correct in finding, under the evidence, that there was no negligence on the part of appellant or her attorneys. There is no error in the record, and the judgment is affirmed.