ROYAL *v.* McVAY.

Opinion delivered January 27, 1930.

974

*Cravens & Cravens,* for appellant.

*A. M. Dobbs,* for cross-appellant.

*Hays, Priddy & Smallwood,* for appellee.

McHANEY, J. On December 17, 1928, George McVay, Ida Johns, Ruby Wilson, Pearl Royal, Ella Harley, N. P. Neindam, David Barnes, and Rufus McVay, by his guardian and next friend, George McVay, and Raymond Carpenter, by his guardian and next friend, Ida Johns, filed their *ex parte* petition in the chancery court of Logan County, Northern District, for partition of certain real estate consisting of town lots and acreage property inherited by them, as all the heirs at law of David McVay, deceased. The petition was filed by Judge Cochran of the firm of Cochran and Arnett, and properly traced the ownership of the property, the relationship of all the petitioners, their respective interests in the real estate sought to be partitioned, and alleged that, by reason of the kind and character of the property and the smallness of the interests of some of the petitioners, the land could not be divided in kind without great prejudice to the owners, but would have to be sold and the proceeds divided. As above stated, the land consisted of lots and houses in the town of Paris, and coal and mineral rights under certain lands, the surface rights of which had been sold to other persons. On February 18, 1929, the court heard the petition for partition, and entered a decree reciting that "the court, being well and sufficiently advised, doth find" all the facts set out in the petition, detailing them, to be true, including a finding that the "lands cannot be divided equitably, justly and fairly in kind because of the great number of shares, and the small interest of some of the petitioners." The court thereupon decreed a sale of the land, and that the peti-

tioners be paid their respective shares as determined by the court after the payment of costs. On March 21, 1929, a sale was had pursuant to the order and direction of the court in which the town lots were sold to one Joe Beshoner, the sale approved and deed made to the purchaser. The country property consisting of farm lands, coal and mineral rights, were sold to appellee, George McVay, appellants, Ida Johns and Pearl Royal, and Ruby Wilson, for the sum of $9,000, to secure which bond was given by the purchasers, and a certificate of purchase issued to them. Thereafter, on April 15, the commissioner filed a report of sale, reporting the sale as above mentioned and praying confirmation. Thereupon, appellee, Ella McVay Harley, and Rufus McVay, a minor, by his mother and next friend, filed exceptions to the sale, and asked that same be rejected, and confirmation refused on the grounds that the sale was made for a grossly inadequate price, and that two of the purchasers, George McVay and Ida Johns, were guardians respectively of Rufus McVay and Raymond Carpenter, and therefore could not purchase at such sale. The court sustained the latter exception, holding that ''George McVay and Ida Johns, under the law of this State, cannot purchase or be interested in the purchasing of their wards' land, although said George McVay and Ida Johns have a one-eighth interest each in the land sold and purchased.'' Another sale was ordered, and thereafter on May 9 the farm lands, coal and mineral rights were sold by the commissioner to Ella McVay Harley for $10,060. On June 18, during the regular June term of court the commissioner filed his report of sale, prayed confirmation thereof, and approval of the deed. Before confirmation the appellants entered their appearance only for the purpose of filing a motion to vacate and set aside the decree of partition made on February 18, and all proceedings had thereunder. They alleged in the motion, which was verified by them, that they were made parties to the *ex parte* petition for partition without their knowl-

edge or consent and without their authority, that no service was had upon them, either personal or constructive; that neither of them authorized Judge Cochran to represent them, and that they had no knowledge concerning the petition, its filing, nor of the decree until about two weeks prior to filing their motion. There was a hearing on this motion, testimony taken on behalf of appellants and appellees, but the appellants themselves did not testify. Judge Cochran testified that he had no directions from the appellants who are nonresidents to file the suit for them, and, so far as he knew, neither of them had knowledge of it; that he was employed by other of the heirs, and that George McVay told him he knew it would be all right with appellants, and would write them and get their consent. McVay testified that he did not do this, and that, so far as he knew, they did not know anything about the bringing of the suit until May; that the property was bid in at the first sale by Mr. Anthony Hall on his instructions for himself and his sisters, but that he had no authority from his sisters to do so, and that appellants were not at the sale. Appellee, Mrs. Harley, testified that she and George McVay consulted Judge Cochran about the partition suit, and that he advised them that all the heirs should be made parties; that immediately after this conference, she wrote to appellants and advised them what Judge Cochran had said, and that he would file the petition; that these letters were written in December, 1928, before the petition was filed, and that both appellants answered these letters; that she wrote them many letters while the matter was pending, and before the sale regarding this matter. She kept no copies of the letters she wrote, and was able to find only two letters she received from her sisters, one signed by Ida Johns and the other by Ida Johns and Ruby Wilson, both written from Atlanta, Georgia, where Mrs. Johns lived, and while Pearl Royal was visiting Ida Johns in Atlanta when these letters were written. In the letter of March 18, Ida Johns said among other things: "I do

hope that everything will be all right when the sale comes up, and that everything can be settled for the best. I feel that George is doing all he can for all of us. I am glad that you and George can be there. Lovingly, Ida." The other letter signed by Ruby and Ida said in part, "I am so sorry that I can't come to Paris for the 21st. * * * We will be anxiously waiting to see what transpires this week, and I do wish that we could be there to help you all." The first sale was held on March 21.

The court overruled the motion to set aside the decree of partition, confirmed the sale, and this appeal was prosecuted. George McVay has appealed from the order setting aside the first sale, and cross-appealed against Mrs. Harley.

We take it for granted that the property is not susceptible of division in kind. It was so alleged in the petition, found to be so in the decree, and neither appellants nor cross-appellant now contend that the decree is erroneous in this particular. In fact, George McVay, who was admittedly a party to the petition, so charged in the petition and was in court ready to so testify when the decree was granted, and the appellants, in their motion to vacate the decree, say the land sold for an inadequate consideration, and they stand ready to bid a higher amount. This is tantamount to saying the land cannot be divided in kind, but should be sold.

Appellants say in their brief: "The real question, raised by this appeal, is whether or not it is necessary, in a partition suit, to make all of the owners parties to the suit, either by personal or constructive service." We think the evidence sufficient to support the finding of the court that all the owners were in fact parties to the petition. The evidence in this regard has already been substantially stated. Their verified motion alleged that they were not parties, and had no knowledge of the proceeding, and they offered the testimony of Judge Cochran and George McVay to support the allegation. But they did not testify themselves, nor submit to cross-examination.

The testimony of Judge Cochran and George McVay was negative in character, that, so far as they knew, appellants were not notified. But the positive testimony of Mrs. Harley that they were notified by her, and that they knew that they were parties, supported by the two letters from them heretofore mentioned, stands undisputed, and, when taken in connection with all the other facts and circumstances in the case, preponderate in support of the holding of the court.

But, conceding for the sake of argument, that they were not parties to the petition, had no knowledge of the proceeding, and that all the allegations in this regard in their motion to vacate are true, still the partition decree is not void, but voidable only, and the decree cannot be vacated or set aside after the lapse of the term except on compliance with the provisions of the statute in this regard (§§ 6290-6292, C. & M. Digest), and then only by setting up a meritorious cause of action or defense. Section 6293. *Martin* v. *Gwynn,* 90 Ark. 44, 117 S. W. 754; *Hare* v. *Ft. Smith W. Ry. Co.,* 104 Ark. 187, 148 S. W. 1038; *Horn* v. *Hull,* 169 Ark. 463, 275 S. W. 905; *Ingram* v. *Raiford,* 174 Ark. 1127, 298 S. W. 507. It has been frequently held by this court that mere inadequacy of consideration is not sufficient ground to set aside a judicial sale, unless the price at which it was sold is so grossly inadequate as to raise a presumption of fraud or unfairness. *Horn* v. *Hull, supra.* In *Ingram* v. *Raiford, supra,* the court, speaking through Mr. Justice Wood said: "By the decree of this court in the case of *Ingram* v. *Wood,* above, it is shown that the interest of all the parties named had been adjudicated and determined by the decree of the Union Chancery Court, May 25, 1925. That decree was final as to all the parties in the original action, except Charlie Ingram, who, to be sure, under the law, had a right, if she were an infant when the decree was rendered, to have the same set aside if no defense was made for her by natural guardian or guardian *ad litem;* but the decree so rendered against her was not

void, but only voidable." The court then held that, before she could set aside the decree, she would have to follow the procedure prescribed by the statute. The court also quoted from *Ryan* v. *Fielder*, 99 Ark. 374, 138 S. W. 973, with reference to a judgment rendered against an infant who was not represented by guardian as follows: "But, if a judgment is rendered against an infant without such defense, it is only voidable under our decisions, and it may be vacated or modified after the expiration of the term of the court in which it was rendered, where the condition of such defendant does not appear in the record nor the error in the proceedings. The proceedings to vacate the judgment for this cause must be by complaint, verified by affidavit setting forth the judgment, or order, the ground to vacate or modify it, and it will not be vacated until it is adjudicated that there is a valid defense to the action in which the judgment was rendered, the court first deciding upon the grounds to vacate before trying the validity of the defense."

Therefore, not having followed the procedure provided by the statute for setting aside judgments and decrees after the lapse of the term, appellants must fail. They not only did not follow § 6290, by alleging one or more of the grounds therein, but failed to allege any defense as provided by § 6293.

With reference to the appeal and cross-appeal of George McVay, it appears that his prayer for appeal was from the order setting aside the first sale. Yet, in the very beginning of his argument in the brief filed by his counsel, it is conceded that the court did not commit "reversible error in setting aside the first sale to four of the tenants in common," and it is further said "that the sale was not void on account of the fact that two of the purchasers in that sale were guardians of minors," as the court held. Whether the reason given by the court in making the order vacating the first sale is right or wrong, if it be conceded that the court did not err in making the order, the question becomes academic, for this

court does not reverse where the order, judgment or decree is right, although the wrong reason may be given therefor. What we have already said regarding the decree not being void, but voidable only, if the infant parties were not represented, applies with equal force to the argument of McVay thereon. Here, on the face of the record, both minors by their statutory guardians were joined as petitioners, in accordance with § 8095, C. & M. Digest, and the statute appears to have been complied with in all particulars, so far as the face of the record is concerned.

Cross-appellant also contends that the court erred in confirming the sale to Mrs. Harley. What we have already said disposes of this question, although a different argument is made. We think the case of *Frazier* v. *Frazier*, 137 Ark. 57, 207 S. W. 215, cited by him, does not support the argument made. It would unduly extend this opinion to follow the argument further, if it is not already too long. Suffice it to say, that we have examined all the points urged in this regard, and find that we cannot sustain them.

The decree is accordingly affirmed.