C. G. DAVIS *v.* V. G. SCHIMMEL, TRUSTEE ET AL

5-5837                                    482 S.W. 2d 785

Opinion delivered July 24, 1972

1202

*McKay, Chandler & Choate,* for appellant.

*Keith, Clegg & Eckert* and *William E. North,* San Antonio, Tex.; *Baker, Botts, Shepherd & Coates,* Houston, Tex.; *Arthur C. Hurt Jr.,* Los Angeles, Cal.; *Stubbleman,*

*McRae, Sealy, Laughlin & Browder,* Midland, Texas, for appellees.

JOHN A. FOGLEMAN, Justice. Appellant filed his petition in the chancery court on June 30, 1969, alleging that he was the owner of oil and gas leases covering an undivided .33517297 of the oil, gas and other minerals in certain lands in Lafayette County. He sought the appointment of a receiver to negotiate and execute leases on unleased interests in these lands. The proceedings were instituted under the provisions of Ark. Stat. Ann. § 52-201, et seq. (Repl. 1971). Appellees (or most of them) were named as defendants in that action. All of them, except Frontier Oil & Gas Co., Inc., were nonresidents of Arkansas. Frontier was a foreign corporation having an agent for service in Arkansas, but no summons was served on this agent. All of the defendants were served by publication of a warning order, except for one resident of the state. Warning order was made on the date the petition was filed, and published on July 3, 10, 17 and 24, 1969. Proof of publication was filed on July 26, 1969. An attorney ad litem reported that he had made diligent search and inquiry as to the whereabouts of the nonresident defendants but had been unable to locate addresses for any of them. He asked that he be dismissed from any further participation.

On the 22nd day of July, 1969, the chancery court appointed William McGill receiver to lease the entire unleased mineral interests. The receiver was directed to report his actions to the court for approval or rejection within 30 days after the execution and delivery of the lease. No bond was required of the receiver. This order was filed on July 24, 1969. McGill filed his report on the same date. He reported that he had granted to appellant an oil and gas lease of the interests of all the defendants for a five-year term for a consideration of $15 per acre for the unleased mineral interests, or $797.79. He paid the rental into the registry of the court, and asked that he be discharged. This report was approved by the court on August 1, 1969, and the order of approval filed August 4, 1969. No pleading was filed by any of the appellees

until on June 30, 1971 and subsequent dates, they filed motions to vacate the orders of the court appointing the receiver and approving his report. Each of the motions alleged that the movant had been prevented from defending by unavoidable casualty or misfortune in that these orders and decrees were entered without notice. The basis of the motion of Frontier was that the constructive service on it was void because it had an agent for service in Arkansas which had not been served with summons. The other appellees alleged that constructive service upon them was void because it was issued upon an insufficient affidavit. Some alleged that their places of residence were recited in the deeds under which they held their interests in the land. All alleged as meritorious defenses that: the orders were void, the service was void; the lease was not "for the best interest of or compensation to" the defendants, in that appellant had paid a higher cash bonus and granted a royalty of one-fourth to other lessors having interests in the same lands; the lands were currently of greater value for oil and gas than previously; the consideration for lease was not "fair and equitable"; the receiver did not negotiate for the lease, but simply permitted appellant to dictate its terms.

Appellant responded, contending that appellees had entered their appearance by filing their respective motions, and thereby cured any lack of previous notice, that there was no unavoidable casualty or misfortune, or meritorious defense alleged. Appellant also denied that the warning order was insufficient notice or that the affidavit therefor was insufficient. Appellees later amended their motions to allege that their separate interests were subject to valid oil and gas leases executed by them.

It was stipulated that Frontier was prevented from appearing by unavoidable casualty or misfortune. Each of the individual appellees testified that he had no notice (from the attorney ad litem or any other person, or by any other means) or knowledge of the pendency of the action until after April 1, 1970. It was shown that drilling was commenced on a well approximately one mile from

the lands involved at 11:30 p.m. on July 3, 1969, where the Buckner Anhydrite was encountered about 9:30 p.m. on July 19, 1969, the Smackover Limestone about 4:30 p.m. on July 23, 1969, and one core was recovered at about 7:30 p.m. on July 23, 1969. It was also shown that a report on file with the Oil and Gas Commission showed that the well was commenced August 18, 1970, and completed August 24, 1970. A test on August 26, 1970, showed 358 barrels of net oil produced and 247 MCE of gas produced. Davis admitted that he had agreed to assign Shell Oil Company one-eighth of the production of oil, gas and minerals on demand as consideration for a lease dated June 9, 1969, but denied that there was any money consideration for the lease.

The chancellor heard appellees' motions on November 19, 1970, and the decree from which this appeal comes was filed April 5, 1971. In granting the motions, the court found that: the orders appointing the receiver and confirming his report were entered without notice, actual or constructive to appellees, and were void; the court lacked jurisdiction to enter them; all proceedings thereunder, including the receiver's lease, were void. On these findings the court set aside the orders and the lease. The chancellor held that the showing of a meritorious defense was not required but that each of the appellees had made a prima facie showing of a meritorious defense. In his memorandum opinion, the chancellor held that: under Ark. Stat. Ann. § 29-107 (Repl. 1962), a judgment rendered without notice is a nullity; the affidavit for warning order was void because it was not signed by the affiant, but by his attorney; the order appointing the receiver was entered prior to the lapse of 30 days from the date the warning order was issued and prior to the filing of the report of the attorney ad litem; the challenge to the jurisdiction itself was a meritorious defense; the defendants had a right to defend at every stage of the proceeding, including the right to object to the appointment of the receiver on the ground of his lack of qualifications and impartiality, and to the making of the lease on the ground that it was not favorable to the mineral owners and the defendants, some of whom were shown to be oil operators themselves and willing to participate

in the risk and expense of drilling operations; the appellees had not entered their appearance in a manner sufficient to validate the proceedings.

Appellant contends that Ark. Stat. Ann. § 52-203 under which the original proceedings were had, by its own language barring any attack upon the lease entered into by the receiver "except by direct appeal in the manner provided by law," renders appellees' method of attack unavailable to them. He argues that the language of the statute is to be taken literally and that no action to set aside the decree appointing the receiver or approving the lease entered into by him except by appeal to this court from that decree, even by one who has no notice of the proceeding in which it is rendered and no reasonable opportunity to be heard. We cannot construe the language of the statute as appellant does, because to do so would render it unconstitutional. Constitutional due process requires that no one be deprived of his property or rights therein without being given an opportunity to be heard. *Meserve* v. *Edmonds*, 223 Ark. 297, 265 S.W. 2d 704; *Boddie* v. *Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971); *Mullane* v. *Central Hanover Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950). See also, *City of Texarkana* v. *Brachfield*, 207 Ark. 774, 183 S.W. 2d 304; *Craig* v. *Russellville Waterworks Imp. Dist.*, 84 Ark. 390, 105 S.W. 867; *McLean* v. *City of Ft. Smith*, 185 Ark. 582, 48 S.W. 2d 228; *Pulaski County* v. *Commercial National Bank*, 210 Ark. 124, 194 S.W. 2d 883; *Massey* v. *Arkansas & Missouri Highway District*, 163 Ark. 63, 259 S.W. 387.

Due process requires, at a minimum, that one be given a meaningful opportunity for a hearing, appropriate to the nature of the case and preceded by notice, before he is deprived of any significant property interest, except where some valid, overriding state interest justifies postponing the hearing until after the event. *Boddie* v. *Connecticut*, supra; *Board of Levee Commissioners* v. *Johnson*, 178 Ky. 287, 199 S.W. 8, L.R.A. 1918E 202 (1917). Due process requirements are satisfied if the property owner has reasonable notice and a reasonable op-

portunity to be heard and to present his claim or defense, or to protect and enforce his rights, before a tribunal having power to hear and rule his cause, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. *Dohany* v. *Rogers,* 281 U.S. 362, 50 S. Ct. 299, 74 L. Ed. 904, 68 A.L.R. 434 (1930); *State ex rel Sweezer* v. *Green,* 360 Mo. 1249, 232 S.W. 2d 897, 24 A.L.R. 2d 340 (1950), [overruled on another point, *State* v. *Kirtley,* 327 S.W. 2d 166 (Mo. 1959).]

A purely arbitrary or capricious exercise of legislative power, whereby a wrongful and highly injurious invasion of property rights is practically sanctioned and the owner stripped of all remedy is wholly at variance with the principles of due process. *Truax* v. *Corrigan,* 257 U.S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A.L.R. 375 (1921). In the concrete, due process means that in a contest concerning rights of life, liberty or property, a citizen will be given a reasonable opportunity to contest the propriety of each step in the proceedings against him. *State* v. *Broaddus,* 315 Mo. 1279, 289 S.W. 792 (1926); *City of St. Louis* v. *Missouri Pacific R. Co.,* 278 Mo. 205, 211 S.W. 671 (1919). Since notice and an opportunity to be heard are prerequisites of jurisdiction and jurisdiction a prerequisite of a valid judgment, the legislature is without authority to dispense with these requirements of due process. *Board of Commissioners of Roxboro* v. *Bumpass,* 233 N.C. 190, 63 S.E. 2d 144 (1951); and see Leflar, American Conflicts Law 35, § 20 (2d Ed., 1968).

It will be noted that the statutory limitation on the attack on the validity of a lease approved by the court applies to nonresidents. Notice of appeal must be given within 30 days from the entry of any judgment or decree from which an appeal is taken. Ark. Stat. Ann. § 27-2106.1 (Repl. 1962). Even if a nonresident defendant without any notice or service, actual or constructive, could ever avail himself of a technical "direct appeal," his trial de novo on a chancery appeal would have little meaning, for he would be unable to present any evidence to support his claim or defense. It cannot be said that appellant's

construction would accord due process of law to non-residents. *Thornton* v. *Road Imp. Dist. No. 1,* 291 F. 518 (8th Cir. 1923), dismissed 269 U.S. 592, 46 S. Ct. 12, 70 L. Ed. 429 (1925). We will not presume that the General Assembly intended to pass an unconstitutional act, but will construe an act to sustain it, if such a construction may be fairly and reasonably given. *McLeod* v. *Santa Fe Trail Transp. Co.,* 205 Ark. 225, 168 S.W. 2d 413; *Lacefield* v. *Taylor,* 185 Ark. 648, 48 S.W. 2d 832. If we construe the words "direct appeal," however, to mean "direct attack" in the manner provided by law, then the statute would not violate constitutional due process. The word "appeal" has been taken in appropriate context to mean an application to the same tribunal that originally acted to reconsider, review or reverse its own previous action. *Longworth* v. *Sturges and Anderson,* 4 Ohio St. Rep. 690 (1855); *Leach* v. *Blakely,* 34 Vt. 134 (1861).

Appellees have mounted a direct attack upon the action of the chancery court. We have long held that any proceeding or motion to have a judgment declared void upon the ground that it was entered without service or notice is a direct and not a collateral attack. *Meserve* v. *Edmonds,* 223 Ark. 297, 265 S.W. 2d 704; *Morgan* v. *Leon,* 178 Ark. 768, 12 S.W. 2d 404; *Wilder* v. *Harris,* 205 Ark. 341, 168 S.W. 2d 804; *Brick* v. *Sovereign Grand Lodge,* 196 Ark. 372, 117 S.W. 2d 1060; *Brookfield* v. *Harahan Viaduct Improvement Dist.,* 186 Ark. 599, 54 S.W. 2d 689; *Woods* v. *Quarles,* 178 Ark. 1158, 13 S.W. 2d 617; *Hall* v. *Huff,* 122 Ark. 67, 182 S.W. 535.

Appellant next contends that by alleging a meritorious defense and praying that the orders of the court be set aside because of unavoidable casualty based on lack of previous notice of the proceedings, appellees entered their appearance in the action. With this argument, we agree, but we agree with the chancellor that this appearance does not cure any decrees previously entered in the case which are void for want of notice or process. Appellees contend that they have not entered their appearance at all, relying upon *Southern Building & Loan Assn.* v. *Hallum,* 59 Ark. 583, 28 S.W. 420. We do not agree

with their analysis of that decision. It was there held that the filing of the motion to set aside a default judgment on the ground that defendant had not been served with process did not constitute an appearance or waiver of service, but this holding could not be said to relate to anything more than the validity of the default judgment. because that judgment was reversed and the cause remanded to the trial court to be proceeded with by that court as if the appellant (who had not been served) was duly served with process in the action. The identical action was taken under similar circumstances in *St. Louis, I. M. & S. Ry. Co.* v. *State,* 68 Ark. 561, 60 S.W. 654.

When the sole basis for attack upon the jurisdiction of the court to render a decree is want of service of process sufficient to enable a party to appear and defend but service obviously can be had without questions of venue or subject matter jurisdiction arising, it would be absurd to set aside the judgment and require an entirely new service of process. It is a different matter when the ability of the moving party to bring the objecting party within the jurisdiction of the court by the service of process is doubtful or where questions of venue would arise. No doubt exists here as to the power of the court to grant the relief sought, upon proper showing, after proper service of process, actual or constructive, has been had. No venue problems present themselves. Actually, the authority relied upon in *Hallum* recognized that a motion to set aside a judgment and continue the cause could operate as a waiver of notice when sustained, but not when overruled. *Baskins* v. *Wylds, Admr.,* 39 Ark. 347. In *Pennington's Admrx.* v. *Gibson,* 6 Ark. 447, this court said:

> The appellant, by appearing and applying to have the default set aside, waived none of her legal rights, except that of notice. She appeared, as she had a right to do, to ask the court to set aside a mere nullity, and when that was done, she was in court for the first time, and consequently authorized to interpose any defence whatever.

A different situation prevails where there is a motion to quash service before judgment. Appellees were urging the court that they had a meritorious defense. They should be permitted to assert it, but new process or service is not required.

Appellant urges that there was no showing of unavoidable casualty because, he contends, the warning order was validly issued and published. We need not go into the sufficiency of the report of the attorney ad litem or of the availability or lack of information as to the wherabouts of appellees, because we agree with the chancellor that the warning order was void.

Under the express terms of Ark. Stat. Ann. § 52-203, summons is to be served as in other cases in chancery and persons whose whereabouts are stated in the petition to be unknown to the plaintiff are to be constructively summoned as provided in Ark. Stat. Ann §§ 27-354, 27-357 and 27-359 (Repl. 1962). Most of the appellees are specifically named in the petition but there is no allegation in the petition that the whereabouts of any person is unknown nor are any named as "all wh m it may concern"; however, we may consider the peti..on and affidavit for warning order as a unit in deciding whether the clerk of the court was authorized to issue a warning order. *Harding Construction Co.* v. *Drainage District No. 17,* 178 Ark. 778, 13 S.W. 2d 312. The body of the affidavit for warning order in this case, omitting the names of most of the defendants, reads:

COMES C. G. Davis, plaintiff herein, and states on oath that he has made diligent search and inquiry as to the whereabouts of the defendants, V. G. Schimmel, Trustee, and Mrs. V. G. Schimmel, * * * Lewis W. Pollock and Mrs. Lewis W. Pollock, his wife, and/or their unknown heirs, Jobar Royalties, Inc., * * * and Frontier Oil & Gas Co., Inc., or their unknown successors, Trustees in liquidation or any unknown stockholders, are, to the best of his information and belief, non-residents of the County of Columbia and

State of Arkansas; and he prays that Warning Order issue for said defendants.

The only signature on the affidavit is that of the law firm representing appellant, by a member of the firm.[1]

The proceeding under review is a statutory proceeding and the statute contemplates that the owners of interests other than those of the petitioner be made parties defendant, and that such owners as were nonresidents be served by warning order. The proceeding, in this respect, closely parallels the statutory action to quiet or confirm title. See *Quertermous* v. *Bilby*, 144 Ark. 98, 221 S.W. 856; *Frank* v. *Frank*, 175 Ark. 285, 298 S.W. 1026. In a statutory proceeding outside the scope of the common law every act which is jurisdictional or the essence of the proceeding or for the benefit of the party affected is mandatory, even when the proceedings are denominated as in rem by the terms of the statute, and it is necessary that the mode of obtaining jurisdiction prescribed by the statute be strictly pursued. *Sinclair Refining Co.* v. *Bounds*, 198 Ark. 149, 127 S.W. 2d 629; *Frank* v. *Frank*, supra; *Quertermous* v. *Bilby*, supra; *Van Etten* v. *Daugherty*, 83 Ark. 534, 103 S. W. 737. When the statutory requirements as to service are not strictly complied with, a judgment or decree affecting or divesting property rights of one not served has been called "absolutely null and void" and "utterly void." *Quertermous* v. *Bilby*, supra; *Van Etten* v. *Daugherty*, supra. Arkansas Statutes Annotated § 29-107 provides that judgments, orders and decrees made against anyone without notice, actual or constructive, and all proceedings had thereunder are absolutely null and void. See also, *Sinclair Refining Co.* v. *Bounds*, supra; *Frank* v. *Frank*, supra.

A method of service required for nonresidents is by publication of warning order. *Ark. Stat. Ann.* §§ 52-203, 27-354—357. The rule is well established that when constructive notice only is given, the requirements of the statute must be strictly complied with. *Sinclair Refining Co.* v. *Bounds*, supra; *Swartz* v. *Drinker*, 192

---

[1]Appellant was not then represented by any of the attorneys representing him in the present proceeding.

Ark. 198, 90 S.W. 2d 483; *Missouri Pacific R. Co.* v. *McLendon,* 185 Ark. 204, 46 S.W. 2d 626; *Lawrence* v. *State,* 30 Ark. 719. Where essential statutory provisions governing service by publication are not strictly complied with as to nonresident defendants, all proceedings as to them are void. *Beidler* v. *Beidler,* 71 Ark. 318, 74 S.W. 13.

It has even been held that, where jurisdiction must be exercised by a court in a special manner, and not according to the course of the common law, the facts essential to the exercise of such jurisdiction must appear in the record; and, if they do not, a judgment in the proceeding is void. *Monks* v. *Duffle,* 163 Ark. 118, 259 S.W. 735.

Where an action is based on constructive service, no action is commenced or cause pending until the proceedings provided for in the governing statute are complied with and if there is no such compliance, the proceedings are void, and the court has no power to take affirmative action. *Swartz* v. *Drinker,* supra; *Missouri Pacific R. Co.* v. *McLendon,* supra; *Sinclair Refining Co.* v. *Bounds,* supra; *Frank* v. *Frank,* supra. It is only where the affidavit prescribed by Ark. Stat. Ann. § 27-354 has been made and warning order based thereon has been issued that the action can be said to have been commenced or the cause pending, and until this is done, the court has no jurisdiction. *Swartz* v. *Drinker,* supra; *Missouri Pacific R. Co.* v. *McLendon,* supra; *Frank* v. *Frank,* supra.

The affidavit for warning order must show that the plaintiff has made diligent inquiry and that it is his information and belief that the defendant is a nonresident. It must strictly comply with the statute. *Holloway* v. *Holloway,* 85 Ark. 431, 108 S.W. 837; *Waggoner* v. *Fogleman,* 53 Ark. 181, 13 S.W. 729; *Turnage* v. *Fisk, Executor,* 22 Ark. 286; *Allen & Hill, Admrs.* v. *Smith,* 25 Ark. 495.

The affidavit here is not in strict compliance with statutory requirements. Even though Ark. Stat. Ann. § 27-1107 (Repl. 1962) permits an affidavit to obtain a warning order to be made by the attorney of the party, it also

requires that the "affidavit of such agent or attorney shall state that the affiant is the agent or attorney of the party." We might say that, reading the complaint, its verification, and the signature to the affidavit both the law firm and the individual partner are identified as attorneys for the plaintiff. This has been held sufficient in some jurisdictions. See *Anthony* v. *Anthony,* 221 Ala. 221, 128 So. 440 (1930). We cannot say, however, that the attorney is the affiant. The introduction to the affidavit clearly identifies the plaintiff himself as the affiant and the body thereof purports to state plaintiff's own diligent search and inquiry, not that of his attorney, and plaintiff's own information and belief, but not that of the attorney. The language of our statute seems to require that the diligent inquiry be by the plaintiff and that the information and belief be his own. See *Faulkner* v. *Kirkes,* 276 P. 2d 264, 47 A.L.R. 2d 418 (Okla. 1954). However, there seems to be a split of authority on the question whether such an affidavit by an attorney must state the attorney's knowledge, information and diligence or that of the client. See Annot. 47 A.L.R. 2d 423 (1956). Be that as it may, we cannot say which situation is stated in this case, or who the affiant actually is. The jurat is in the usual form, i.e., "Sworn to and subscribed before me. . ." The affidavit certainly is not signed by the plaintiff, nor does the signature purport to be that of plaintiff. It is clearly that of his attorney. The body of the affidavit does not purport to be upon the oath of the attorney. The jurat does not make any distinction showing which person was sworn and which one subscribed. We must sustain the chancellor's holding that this affidavit was void because it was not signed by the affiant but by his attorney.

Because of the invalidity of the affidavit for warning order for failure to comply strictly with statutory requirements, the warning order was void, no action was commenced or pending as to the defendants to be constructively served thereby, and the order appointing the receiver and confirming the lease made to the plaintiff was void. *Sinclair Refining Co.* v. *Bounds,* supra; *Frank* v. *Frank,* supra. See also, *Monks* v. *Duffle,* supra. As we said in *Frank,* the defendants were not in court and the case was prematurely submitted to the court.

Appellees argue that, since Ark. Stat. Ann. § 27-355 (Repl. 1962) permits the court to make the warning order upon the requisite facts being shown by affidavit or other proof, this warning order was properly issued. No warning order was made by the court. The warning order here was made by the clerk.[2] Still, even if the clerk should be authorized to make a warning order under this section there is no proof on which to base its issuance other than the defective affidavit.

Of course, the decrees are also void as to Frontier because it had a properly designated agent for service in the state. *Sinclair Refining Co.* v. *Bounds,* supra. Furthermore, since the lease was made to appellant, he is in no position to assert that it is impervious to attack by appellees. In *Beidler* v. *Beidler,* supra, we held that an attachment plaintiff, purchasing at an attachment sale in the action instituted by him, was in no position to assert his title thereunder against the rights and equities of a defendant on whom constructive service was invalid. The same rule should apply here.

This brings us to appellant's contention that, before appellees could have the judgment vacated, it was necessary that they make a prima facie showing of a meritorious defense and that they failed to do so. Appellees contend, however, that they did show a meritorious defense by showing that the judgment was void for want of jurisdiction, that they had a right to object to the appointment of McGill, that the evidence showed an inadequate consideration for the lease which was fixed by appellant himself and that appellant failed to reveal to McGill the discovery of oil by appellant in the nearby well, and that appellees had the right to protect their interest at every step during the receivership, which would be particularly meaningful since some of the appellees were engaged in oil operations themselves.

---

[2] The proof of publication in the transcript so reflects. The transcript does not reflect that there is actually a warning order in the files in the case.

The receiver reported that the lease was for the best interest of the parties to the action. The receiver never appeared before the court. His report was approved, with the court's routinely accepting the report at face value. The receiver testified that he served as such at the request of appellant, his close personal friend and associate in the oil business. He said that thereafter he dealt only with appellant's attorney. He signed papers previously prepared by appellant's attorney after only 15 to 30 minutes of conversation with the attorney and without knowledge of significant developments that had taken place with respect to the drilling of a well about one mile away. He said that he would personally prefer an 1/8 override, such as was given one of Davis' lessors, to a $15 per acre paid up lease.

We are inclined to agree with the chancellor that prima facie evidence showing a meritorious defense was not necessary in this direct attack upon the court's orders in which it was clearly shown that they were absolutely and completely null and void, not voidable, because they were rendered in a statutory action or proceeding which was not actually pending because it had not even been commenced. We say this in spite of the fact that language in opinions in some of our decisions would indicate that such a showing is required. Those decisions where the attack was collateral or where the proceedings were not in a statutory action are not governing in this situation. Those involving judgments rendered when an action was actually pending are also inapplicable to this situation.

It is widely recognized that there are many exceptions to the rule requiring that a meritorious defense be shown before a judgment is vacated. In 49 C.J.S. 644, Judgments § 336, we read:

> *Exceptions to the rule* have been made in a variety of cases. * * * It has been held that a meritorious defense need not be shown where the judgment is void, or at least where it is void on the face of the record, or where the judgment is void for want of jurisdiction, as where defendant was never served; but it has been held that a meritorious defense must be shown where

the judgment recites facts sustaining jurisdiction, or where the judgment is voidable. It has been held that, a meritorious defense need not be shown where the default judgment was entered without authority, by mistake, irregularity, or improvidently, as where a judgment was taken by default before defendant's time to answer had expired or after the case was at issue; but it has also been held that the fact that the judgment was irregularly entered does not dispense with the need of showing a meritorious defense. It has been held that a meritorious defense need not be shown where the judgment is fundamentally erroneous.

See also, 49 C.J.S. 537, Judgments § 290; 46 Am. Jur. 2d 901, Judgments §740.

We have acknowledged that there are exceptions to the rule. Even though the decision was rendered before the adoption of the civil code, it was recognized in *Browning* v. *Roane,* 9 Ark. 354, that we followed the general rule requiring that a party seeking relief from a default judgment show a meritorious defense, but it was also stated that there are proper exceptions. This court said:

We refer to these decisions not to adopt or approve them, but only to show that this general rule, requiring merits to be shown in order to relieve a party against a default, like most of the general rules of law, has been sometimes held to have exceptions, not only in an entire class of cases, but in other cases depending upon their own peculiar circumstances, and, although we are unwilling to go to the length of all the New York decisions on this subject, it is obvious that the rule must have some exceptions, as it is easy to conceive of cases, as for instance, where a default is taken against a defendant before the ⸤expiration⸥ of the time allowed him to plead, where every possible presumption of law that a default could raise against him would be entirely removed by merely pointing out such gross irregularity as that indicated in the case supposed whereby he has been deprived of a substantive right. And while, by deciding

the case before us, we design to declare no rule to embrace numerous cases of exceptions, we are of opinion that this case, under its peculiar circumstances, is as fully without the general rule as the case supposed.

Lately, in *Halliman* v. *Stiles,* 250 Ark. 249, 464 S.W. 2d 573, we recognized that in the absence of actual notice the due process impact upon statutory service requirements necessitated that there be strict construction of the statutes and exact compliance with their terms. In *Halliman,* where a direct attack upon a personal judgment was made, we specifically held that when personal jurisdiction is essential to a judgment in personam any adjudication based upon service which did not give the court personal jurisdiction over the judgment defendant was void, without regard to whether a meritorious defense was shown. We recognize that *Halliman* might be distinguished from this case because no personal judgment was rendered or sought here. Still, property rights are materially affected and our decisions have said that similar judgments, orders and decrees affecting property rights are void in terms that clearly do imply that they are not voidable only. We have recognized, as previously indicated, that due process requirements do also affect proceedings involving property rights.

We have also recognized exceptions in cases involving property rights. In *Woolfolk* v. *Davis,* 225 Ark. 722, 285 S.W. 2d 321, when a judgment was asserted as res judicata of certain issues before the court, we said that it was unnecessary to decide whether the attack made on the judgment was direct or collateral, because there was a total lack of service upon the defendants. Relying upon that case and Ark. Stat. Ann. § 29-107, we said that a foreclosure deed was void, where appellants had no notice, either actual or constructive, that the improvement district foreclosure suit would be, or had been, filed. We rejected the contention that it was incumbent upon the appellants to show a meritorious defense, and distinguished *Davis* v. *Bank of Atkins,* 205 Ark. 144, 167 S.W. 2d 876, by showing that the judgment in that case was voidable, but not void. *Beck* v. *Rhoads,* 235 Ark. 619, 361 S.W. 2d 545.[3]

[3] In that case, one of the judges, who dissented in *Davis,* concurred, pointing out that the court was actually following his dissent in *Davis,* mentioned infra.

We have long recognized that there is a difference between void and voidable judgments. In *McDonald* v. *Ft. Smith & W. R. Co.*, 105 Ark. 5, 150 S.W. 135, the attack was held to be collateral, but we emphasized the distinction, saying:

> When a judgment is not a mere nullity, but only contains some defect which may become fatal and render it invalid, then it is only voidable, and, until it is actually annulled, it has all the force and effect of a perfectly valid judgment. Until by a proper proceeding such judgment is reversed or vacated, it will be effective * * * as an estoppel or as a source of title. A judgment rendered by a court without jurisdiction is void; and, to have such jurisdiction, the court must have jurisdiction both over the subject-matter of the suit and the parties thereto.

> * * * A judgment pronounced against one without notice is void; and section 4424 of Kirby's Digest [Ark. Stat. Ann. § 29-107] is a statutory declaration of that principle.

In *Nickles* v. *Wood,* 221 Ark. 630, 255 S.W. 2d 433, we repeated the above language, and stated that the decision in *McDonald* had been cited with approval many times and never overruled.

Many of the decisions requiring the prima facie showing of a meritorious defense before a judgment is set aside for want of notice may spring from a misapplication of precedent in *Sovereign Camp, Woodmen of the World* v. *Wilson,* 136 Ark. 546, 207 S.W. 45. There we said that the presumption of regularity attending a judgment of a court of general jurisdiction could not be controverted except by showing that there was in fact no notice and that there existed a meritorious defense. The first case cited, *Boyd* v. *Roane,* 49 Ark. 397, 5 S.W. 704, was only relied upon to sustain the statement that there was a presumption of regularity attending a judgment of superior courts of general jurisdiction. In that case the court classified the attack as collateral because the suit was against a stranger

to the decree and stated that the record in the case in which the decree attacked was entered showed that process was issued for the attacking minor and the decree recited an appearance of the parties. One of the cases relied upon as requiring the showing of a meritorious defense was *State* v. *Hill,* 50 Ark. 458, 8 S.W. 401, in which the court only treated the requirements to be met before a court of equity would vacate a judgment at law because of an officer's false return of service of process. The other, *Quigley* v. *Hammond,* 104 Ark. 449, 148 S.W. 275, had nothing to do with lack of service of process, but related only to a proceeding to vacate a judgment on the ground that it was obtained through fraud. In *Wilson,* a summons was issued, so a cause of action was pending when the judgment was rendered.

In spite of the distinction between void and voidable judgments, we have decisions that can only be construed as requiring prima facie evidence of a meritorious judgment, even when the judgment is void for want of service of process. See, e.g.:

> *Chambliss* v. *Reppy,* 54    Ark. 539, 16 S.W. 571 (the ground alleged as a basis for relief appears to have been fraud practiced by the successful party by falsely representing that there had been a proper return of service of process upon the defendant, and the proceeding was brought under Ark. Stat. Ann. 29-506);

> *Nelson* v. *Freeman,* 136 Ark. 396, 206 S.W. 667 (where the court held first that the party attacking the judgment was conclusively bound by a finding that he had been properly served);

> *Royal* v. *McVay,* 180 Ark. 973, 23 S.W. 2d 983 (the court first held that the appellants were actually parties to an ex parte partition and then added that the decree was not void but voidable, even if appellants had not been parties to the proceeding and had been without knowledge of it);

> *Nichols* v. *Arkansas Trust Co.,* 207 Ark. 174, 179 S.W. 2d 857;

*Haville* v. *Pearrow,* 233 Ark. 586, 346 S.W. 2d 204.

There is a basis upon which many cases relied upon by appellant can be distinguished. First, there are those in which the question as to issuance or service of process was not raised:

> *Citizens Bank of Lavaca* v. *Barr,* 123 Ark. 443, 185 S.W. 773; *Hill* v. *Teague,* 194 Ark. 552, 108 S.W. 2d 889; *Overton* v. *Alston,* 199 Ark. 96, 132 S.W. 2d 834; *Abercrombie* v. *Richards,* 248 Ark. 1322, 455 S.W. 2d 887; in *Agee* v. *Wildman,* 240 Ark. 111, 398 S.W. 2d 542, appellant did not argue on appeal that there was no service. He argued that the service was constructive but we said that it was personal. The failure to prove a meritorious defense was considered fatal on appellant's assertion that his failure to make timely appearance was unavoidable because he had no notice of the pendency of the action, service having been had on the Secretary of State under Ark. Stat. Ann. § 27-342.1 (Supp. 1971).

Then there are those cases in which this court classified the attack as collateral:

> *O'Neal* v. *B. F. Goodrich Rubber Co.,* 204 Ark. 371, 162 S.W. 2d 52; *Davis* v. *Bank of Atkins,* 205 Ark. 144, 167 S.W. 2d 876.

In some cases knowledge of the pendency of the action by the moving party was considered material, e.g., *Merriott* v. *Kilgore,* 200 Ark. 394, 139 S.W. 2d 387.

We are unable to ascertain the ground alleged for the vacation of the judgment in *Osborne* v. *Lawrence,* 123 Ark. 447, 185 S.W. 2d 774.

Other precedents may have sprung from a disregard, or misapplication of the distinction between a void judgment and a voidable one. See *Royal* v. *McVay,* supra; *Davis* v. *Bank of Atkins,* supra (where the court declared the judgment voidable without analysis of the distinction, over the strong protest of two dissenting justices).

There are also cases which seem to apply the requirement of a showing of meritorious defense stated in Ark. Stat. Ann. § 29-509 (Repl. 1962), upon the theory that, after the expiration of the term of court during which a judgment was rendered, the court can only set aside the judgment in a proceeding based upon Ark. Stat. Ann. §§ 29-506—512 (Repl. 1962). See *Royal* v. *McVay*, supra; *Hill* v. *Teague*, supra.

This continued requirement of the showing of a meritorious defense to a void judgment now impresses us as somewhat inconsistent with our following the rule stated in *McDonald* v. *Fort Smith & Western R. Co.*, 105 Ark. 5, 150 S.W. 135, to permit a judgment to be disregarded as void on collateral attack. See *Anderson* v. *Walker*, 228 Ark. 113, 306 S.W. 2d 318. If a judgment can be disregarded on collateral attack, there is no sound reason why it should not be set aside on direct attack.

Appellant has not cited any case in which a prima facie showing of meritorious defense was a prerequisite to setting aside, on direct attack, a judgment, order or decree, rendered in a statutory proceeding unknown to the common law, for want of service or notice, where no action was actually commenced or pending at the time of the entry of the judgment, order or decree because there had not been a strict compliance with procedural requirements relating to the issuance of process or notice. In addition to other factors bearing on the service here, we point out that neither of the orders involved contained any recitals relating to process or service. We hold that under the circumstances prevailing here, the judgment was void, not voidable, and that there was no necessity for a showing of a meritorious defense. To hold that it was necessary would be contrary to our holding in such cases as *Frank* v. *Frank*, supra, that a court in proceedings such as this is without jurisdiction to make any final order affecting the rights of the defendants until a proper warning order has been published for four weeks and 30 days has elapsed after the appointment of the attorney ad litem.

Appellant contends that Ark. Stat. Ann. § 52-206 authorizes the appointment of a receiver to negotiate a lease

upon the filing of the petition. We do not agree that this section is intended to authorize appointment before the action is pending. Actually, the appointment of a receiver and his negotiation of a lease are not merely incidental to the proceedings but are the ultimate remedies in the case. Under appellant's theory a receiver could be appointed and his lease approved before expiration of the time for answer by any named defendant, whether served personally or constructively. This would not be consistent with our holding in *Frank*. Furthermore, even where the appointment of a receiver was made as an incident to the action, we said that the pendency of a suit is an absolute prerequisite to the appointment of a receiver, and unless made in a pending action, the court is without jurisdiction, and such an order appointing a receiver is void. *District No. 21, UMW* v. *Bourland,* 169 Ark. 796, 277 S.W. 546. This is not to say that a receiver can never be appointed in any case without previous notice of the application to the adverse party, as was done in *Excelsior White Lime Co.* v. *Rieff,* 107 Ark. 554, 155 S.W. 921. But in that case, it was not shown that there was no action pending at the time of the appointment.

We conclude that the chancery court did have the power to declare its own orders in this case to be null and void and that it properly did so. Accordingly, the decree is affirmed.

BYRD, J., dissents.

GEORGE ROSE SMITH, J., concurs.